[Crim. No. 2976. Third Dist. Nov. 12, 1959.]

THE PEOPLE, Respondent, v. JAMES WARREN, Appellant.

234

236

237

Harry A. Ackley for Appellant.

Stanley Mosk, Attorney General, Doris Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—James Warren was found guilty by a jury of violating section 503 of the Vehicle Code. (Driving or taking a vehicle of another without consent and with intent to deprive the owner of the vehicle of his title or possession.)

He has appealed from the judgment entered, from the order of the court denying his motion for a new trial, and from the sentence imposed. ██ The latter is not an appealable order and the purported appeal therefrom must be and hereby is dismissed.

Appellant makes a number of contentions in arguing for a reversal of the judgment and order, but before discussing them we shall give a brief summary of the evidence as shown by the record.

Between 2 and 3 o'clock on the afternoon of November 20, 1957, the appellant was observed on the lot of Burton Motors in the vicinity of the new Thunderbirds. The appellant entered one of these cars and started the motor. On the morning of November 21, 1957, about 3 or 4 a.m., appellant was observed walking down the street adjacent to the Burton Motors' car lot in West Sacramento. The private patrol operator who observed appellant recognized him as the man he had seen on the lot near some new Thunderbirds the previous afternoon. The patrolman drove on his rounds and then becoming suspicious returned to the car lot where he discovered that a vehicle which was usually parked in such a manner as to block the entrance had been moved. He found that the gate was opened. He observed tire marks leading out of the lot. It was later discovered that a new blue 1957 Thunderbird was missing.

On either the 21st or 22d of November, 1957, appellant asked a Richard Lucientes, a person who resided in appellant's home, if he wanted to go for a ride to McClellan Field. As they left the house Lucientes saw a new 1957 blue Thunderbird with paper license plates in the driveway. A third person got into the Thunderbird and appellant and Lucientes got into a pickup and drove to the airfield. The other man followed in the Thunderbird. The Thunderbird was parked in a parking lot near a barracks. Appellant then drove this other man to North Sacramento.

About the same time appellant contacted a Joseph Hunt and asked him if he wanted an engine for his car. Appellant then took Hunt to the airfield and showed him a blue 1957 Thunderbird. The speedometer of the car indicated that the car had been driven some 17 miles. It had plastic seat covers and paper license plates. Hunt testified that Warren told him the car had been stolen; that he did not have any place to store it; and that if he could store it in Hunt's garage Hunt could have the engine. That night the car was delivered to

Hunt's garage. Hunt, Lucientes, and appellant dismantled the car. The identification numbers on the motor and frame were destroyed. Hunt, following appellant's instructions, cut the car in two. While doing this Hunt found a set of keys in a leather case with the name "Burton Motors" imprinted on the case underneath the seat. The front section of the car and the top were taken to appellant's shop where they were used to repair a 1956 Thunderbird which appellant had purchased for $1,300 from an insurance company after the car had been involved in an accident in which the front end had been badly damaged. This car was later found in southern California. An inspection disclosed that the fire wall, the two front fenders, the grille, and the hood were from a blue 1957 Thunderbird.

After Lucientes had been interviewed by the police concerning the theft, he told appellant what he had told the police; and appellant jokingly said, "Well, you screwed yourself and me too."

Appellant's story was that late one night a stranger came to his door and offered to sell him the 1957 Thunderbird; that he refused; that upon the stranger's request appellant followed him to the airfield where the stranger parked the car; that appellant took him to North Sacramento; that he informed Hunt of the car and drove him to see it; and that he later went to Hunt's home and purchased the front end for $250. He admitted using the parts on the 1956 Thunderbird.

Appellant's first contention is that the court misdirected the jury. ▇ To convict one of a violation of section 503 of the Vehicle Code specific intent must be found. (*People* v. *Sanchez*, 35 Cal.2d 522 [219 P.2d 9].) ▇ It is the rule that "where the lawfulness of the act depends upon a specific intent, to instruct upon general as well as specific intent normally would confuse the jury and is error." (*People* v. *Barkoff*, 163 Cal.App.2d 639, 648 [329 P.2d 1005].) ▇ In the instant case the jury was instructed by the court:

"The word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law or to injure another, or to acquire any advantage."

"A person must be presumed to intend to do that which he voluntarily and wilfully does in fact do, and must also be presumed to intend all the natural, probable, and usual consequences of his own acts."

Respondent concedes that an essential element of auto theft, the offense with which appellant was charged, is the "intent to either permanently or temporarily deprive the owner thereof of his title to or possession of . . .;" and concedes further that it was error, when the crime charged required a specific intent, for the court to give instructions that the unlawful intent may be presumed and a general definition of the word "wilful." (*People* v. *Barkoff, supra.*)

However, respondent argues that while instructions as to general intent should not have been given the jury could not have been misled by them, and that therefore no prejudicial error resulted from the giving of them. Respondent points out that the court specifically instructed the jury that "Any person who drives or takes a vehicle not his own, without the consent of the owner, and with intent to either permanently or temporarily deprive the owner of his title to, or possession of, such vehicle, whether with or without intent to steal the same, is guilty of a felony." Respondent also points out that in addition to this, when the jury returned and requested the court to read Vehicle Code, section 503, the court after reading that section explained in some detail that in order to be guilty of violating section 503 a person must take the motor vehicle without his (the owner's) "consent and against his will, and with the intent to either permanently or temporarily deprive the owner of the title to or the possession of his car."

However, as pointed out by respondent, appellant's counsel stipulated at the trial "that a Ford Thunderbird with those serial numbers was stolen from Burton Motors," and this in effect limited the question presented to the jury merely to whether or not it was the appellant who had in fact stolen that car and removed the question of intent from the case. Therefore we have concluded that while the instructions on general intent should not have been given appellant suffered no prejudicial error.

■ Appellant also contends that the court deprived him of the benefit of certain instructions by statements of the court made after the jury returned and sought additional instructions. The jury asked that Vehicle Code, section 503, be reread. The court read the first part of the section but it refused to read: "any person who is a party or accessory to or an accomplice in any such driving or unauthorized taking or stealing is guilty . . . ." The court refused to read the quoted part because it was not part of the instructions previously given to the jury. The court said that what was read

was all that was necessary because that was the theory upon which the case was tried. Appellant contends that the refusal of the court to read the omitted portion deprived him of the benefit of the instructions on accomplices which had been given. We are unable to see how this action of the court could have had this effect.

Appellant also contends that the court erred in permitting the district attorney to ask a defense witness, Janet Ladda, whether or not she had in fact been "sleeping with appellant." This witness was called to establish an alibi for appellant.

■ It is well settled that it is proper cross-examination of a witness to show bias, prejudice, interest, hostility or friendship toward a party by showing that the witness "cherished a friendly interest in appellant" which would bear upon the question of the credibility of her testimony. ■ In the following cases it has been held proper to cross-examine a witness as to whether or not a meretricious relationship existed between the witness and the defendant for whom she testified. (*People* v. *Wayne,* 41 Cal.2d 814, 830 [264 P.2d 547]; *People* v. *Gould,* 111 Cal.App.2d 1, 6 [243 P.2d 809]; *People* v. *Payton,* 36 Cal.App.2d 41, 54 [96 P.2d 991]; *People* v. *Peter,* 125 Cal.App. 657, 663 [14 P.2d 166]; see also 3 Wigmore, § 949.)

■ Appellant also assigns as error the fact that on cross-examination of the witness Hunt counsel for appellant was precluded at one point from inquiring into the question whether or not the witness had been promised immunity by a highway patrol officer. This was error because one may always show that an accomplice (here it was a question of fact whether or not the witness was an accomplice) has been promised immunity. (3 Wigmore, Evidence, § 967.) However, Hunt later testified that he had not received any offers of immunity so appellant was not prejudiced by the erroneous ruling.

Appellant contends further that the deputy district attorney was guilty of prejudicial misconduct in his arguments to the jury in that he threw the weight of his office into the scales by stating his personal belief and opinion as to the guilt of the appellant. Appellant states that in his argument to the jury the deputy district attorney gave a summary of his background as an attorney in private practice and as a prosecutor and stated that he had a high regard for persons accused of crime and then stated to the jury as follows: ". . . and I personally would not undertake the prosecution of any person

242

when I did not feel the evidence was substantial and sufficient with reference to his guilt.''

■ As stated in *People* v. *Kirkes*, 39 Cal.2d 719, at page 723 [249 P.2d 1] : ''It is well established that statements by the prosecuting attorney, not based upon legitimate inferences from the evidence, to the effect that he has personal knowledge of the defendant's guilt and that he would not conduct the prosecution unless he believed the defendant to be guilty are misconduct. (*People* v. *Hidalgo*, 78 Cal.App.2d 926, 939, 941-942 [179 P.2d 102] ; *People* v. *Chilcott*, 18 Cal.App.2d 583, 588 [65 P.2d 450] ; *People* v. *Brown*, 81 Cal.App. 226, 241 [253 P. 735].) 'There can be no excuse for such comment.' (*People* v. *Podwys*, 6 Cal.App.2d 71, 74 [44 P.2d 377].) The classic expression of the rule appears in this oft-quoted statement in *People* v. *Edgar*, 34 Cal.App. 459, 468 [167 P. 891] : '' 'When the district attorney declared that he would not prosecute any man he did not believe to be guilty he thereby wrongfully placed his personal opinion of the guilt of the defendant in evidence in the case. He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged (*People* v. *Rogers*, 163 Cal. 476 [126 P. 143] ; but his declaration to the jury that he would not prosecute any man whom he did not believe to be guilty was tantamount to an assertion that he believed in the guilt of the defendant at the very inception of the prosecution ; and necessarily such belief must have been founded upon the result of the district attorney's original and independent investigation of the charge, and therefore in all likelihood was based, in part at least, upon facts which did not appear and which perhaps could not have been shown in evidence.' ''

■ The remark of the deputy district attorney in the instant case comes dangerously near to a statement that he would not prosecute unless he were convinced that the accused was guilty, but it is also susceptible of the construction that the deputy district attorney would not prosecute unless he believed the evidence was substantial. However, in the instant case no objection was made to the argument at the trial and no request that the jury be admonished was made. Therefore we are of the opinion that even if the remarks of the district attorney were improper they were not so flagrant that they could not have been cured by a prompt admonition to the jury, and the appellant is precluded from raising the question at this time. ■ For as stated in *People* v. *Lyons*, 50 Cal. 2d 245, at page 262 [324 P.2d 556] :

". . . As stated in *People* v. *Berryman* (1936), 6 Cal.2d 331, 337 [57 P.2d 136], 'The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's right will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. (Citation.) There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. (Citation.) The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for reversal of the judgment, even where proper admonitions are given by the court. (Citations.)' Whether a prosecutor has been guilty of prejudicial misconduct must be determined in the light of the particular factual situation involved. Previous authority is of little help. . . ."

 Appellant also claims error because the district attorney told the jury, in response to an argument made by defense counsel that appellant Warren was stupid but he was only guilty of receiving stolen property, that appellant "is no small-fry, he is an intelligent, capable, individual. . . . He had the opportunity to participate in this theft." Appellant contends that this indicated that he was implicated in other criminal activities. However, in context the phrase "no small-fry" was used to show that appellant was not a stupid individual but rather that he was a principal and that he was guilty of theft.

 Appellant also contends that it was error for the district attorney to make the following remark during the course of the trial: "I think that the first portion of that. I think he testified to two things, one, of course, which is true, that the blue Thunderbird did follow them out there. . . ." Again no objection was interposed. The remark was improper. It was for the jury to determine what was true and what was not true. But an admonition would have cured any error and in the absence of one the appellant should not be allowed to complain even if, as contended, the jury could infer from the statement

that the district attorney had other evidence on which he could base the statement.

Appellant also contends that the court erred in refusing to grant a mistrial when appellant was asked whether or not appellant's brother had ever been arrested and convicted of grand theft. The court told the jury to disregard the remark. The question was clearly improper. It was irrelevant. However in view of the prompt admonition by the court, we do not believe that any prejudicial error was committed.

Appellant also challenges the sufficiency of the evidence. This objection goes chiefly to the credibility of the witness Wilkerson who identified appellant as the man whom he saw at the scene of the crime. An interval of some 14 months had elapsed between the time of the crime and the time of the trial. The witness was positive in his identification. While appellant contends that the evidence is inherently improbable the challenge really goes to the credibility of the witness and an appellate court will not substitute its determination for that of the trier of the fact. We think it is clear from all the evidence introduced, as hereinbefore set forth, that Mr. Wilkerson was correct in his identification of appellant. It was the appellant who actually had possession of this car shortly after the theft. What better proof of the accuracy of the identification of this witness could be asked for?

Viewed as a whole, there is little question of the overwhelming evidence of appellant's guilt. Mere possession of a stolen car under suspicious circumstances is sufficient to sustain a conviction of a violation of section 503 of the Vehicle Code. (*People* v. *Rhinehart,* 137 Cal.App.2d 497, 501 [290 P.2d 600] ; *People* v. *Holland,* 82 Cal.App.2d 310, 312 [186 P.2d 58].) Here the evidence showed that the appellant was at the scene of the theft at approximately the time that the car was stolen. Shortly thereafter he was in possession of that automobile. He exercised dominion and control over that automobile by literally cutting it to pieces and appropriating the parts of it for his own use. Add to this the statements of the appellant that he told Mr. Hunt that the car was stolen and that he ordered Hunt to destroy the numbers which appeared on the frame and motor as well as on the plate on the chassis.

From all the evidence, it is apparent that the appellant first purchased the wrecked 1956 Thunderbird and then deliberately set out to steal an automobile from which he could procure parts to repair that salvaged automobile. Appellant's

own explanation of how he gained possession of the parts of this automobile is so fantastic as to itself contribute proof of his guilt. The idea that a total stranger would approach the appellant at midnight and offer to sell him an automobile which was obviously brand new for, as the appellant said, a "rather ridiculous price" could well be rejected by the jury.

Appellant contends also that the trial court erred in not granting a new trial on the ground of newly discovered evidence. The pertinent law is well stated in *People* v. *Beard,* 46 Cal.2d 278, at page 281 [294 P.2d 29], as follows:

"Defendant contends that the trial court erred in denying his motion for a new trial on the ground of newly discovered, evidence.

"Penal Code, section 1181, provides:

" 'When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: . . .

" '8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. . . .'

"In *People* v. *McGarry,* 42 Cal.2d 429, 432 [267 P.2d 254], it was pointed out that a motion for a new trial is addressed to the sound discretion of the trial court, and that 'The elements of the standard by which a trial court in its discretion may properly grant a new trial on the ground of newly discovered evidence are set forth in *People* v. *Sutton,* 73 Cal. 243 [15 P. 86]. At page 247 it is stated that "it must appear, —'1. That the evidence, and not merely its materiality be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.' (1 Hayne on New Trial and Appeal, § 88.) " More recent cases have turned on a lack of one or more of the foregoing requirements, but the over-all rules have withstood the test of time and properly state the existing law. (See *People* v. *Richard,* 101 Cal.App.2d 631, 635-636 [225 P.2d 938].)' (42 Cal.2d at 433.)' "

 Appellant relies upon two affidavits filed in support of the motion for a new trial. One was that of Alta Stavran who worked at Alta's Spudnut which was across the street from the car lot. She stated that on the night in question she observed an automobile being pushed from the lot of said

Burton Motors through the gate surrounding said lot on to Jefferson Boulevard, and that three men were pushing said automobile at said time and place. However, the record shows that the witness Wilkerson testified at the trial under cross-examination by appellant's counsel that he had been informed that a witness across the street from the car lot had observed two men pushing a car out of the way. Appellant's counsel did not ask for a continuance or attempt to contact this witness during the trial, so it is doubtful if this could be termed newly discovered evidence.

The second affidavit was by Richard Lawrence, appellant's counsel at the trial. It stated that during the trial Lucientes, one of the People's witnesses, told affiant that Harry Starr, a highway patrolman, had shown him some pictures and one of them was the picture of the person who had brought the car to the home of appellant; and that after the verdict of the jury appellant stated to affiant that he had received information that Gary Schiro was the person who brought the Thunderbird automobile to his home.

It was for the trial court to weigh the effect of these affidavits, and the granting of a motion for a new trial upon the ground of newly discovered evidence is a matter so completely within the discretion of the trial court that we cannot say that the court abused its discretion in denying the motion.

Appellant's final contention is that the trial court erred in refusing to strike portions of the probation officer's report which stated that many cars in the Sacramento area had been stolen and never had been returned; that this had been going on for 10 years; that the highway patrol had explored every lead in an effort to trace the source and method used; and that the method used by the thieves had been so good that it had been impossible for the law enforcement agencies to trace these stolen cars. The report also stated that the appellant had been deeply involved in the stolen-car racket for the purpose of personal gain. The probation officer must, after the matter is referred to him, "make an investigation of the circumstances surrounding the crime and of the prior record and history of the defendant, must make a written report to the court of the facts found upon such investigation, and must accompany said report with his written recommendations, including his recommendation as to the granting or withholding of probation to the defendant. . . ." (Pen. Code, § 1203.)

We have been cited to no authority which holds that a defendant is entitled to have any part of the probation officer's

report stricken, and we know of none. This report is for the information of the court and to aid it in determining whether or not probation should be granted. If, as appellant contends, it contains information not proper to be considered by the court, we must assume that the court was not influenced by irrelevant matters.

Because of the numerous assignments of error we have made a careful study of the entire record and have concluded that the evidence in the record points so convincingly to the guilt of appellant that even if appellant is correct in some of his contentions of error no miscarriage of justice has resulted.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.