[Crim. No. 3364. Third Dist. Feb. 11, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM HENRY HOUGHTON, Defendant and Appellant.

William Henry Houghton, in pro. per., and Harry A. Ackley for Defendant and Appellant.

Stanley Mosk, Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Appellant was convicted after a jury trial of (1) assault with intent to commit murder, (2) robbery, and, (3) violation of Penal Code section 12021 (possession of a gun by a felon). The indictment had charged appellant with two prior felony convictions, (1) robbery in the first degree and burglary in the second degree and, (2) robbery in the second degree, for each of which he had served a term in the state prison. Appellant had admitted the prior convictions. After conviction, appellant's motion for a new trial was denied and appellant was sentenced to the state prison for the term prescribed by law. It was further ordered that the term of imprisonment under count two, robbery of the first degree, should run consecutively with the term under count one, assault with intent to commit murder, and the term under count three, possession of a gun by a felon, should run consecutively with the term of imprisonment under count two. Appellant was adjudged a habitual criminal.

Appellant appeals from the judgment and from the order denying his motion for a new trial.

Appellant makes no attack upon the sufficiency of the evidence. His contentions made will be noted below. A statement of the evidence sufficient to make the contentions and our comment thereon understandable follows:

At 11 p.m. on the night of November 2, 1961, appellant entered the showroom of Kelly's Shell Service Station and stated to the sole attendant, George Kelly (16-year-old son of the proprietor) : "Let's close the place up." He exhibited a revolver which he then placed in his pocket. He ordered Kelly to remove money from the cash register. Kelly did so

as directed. He was then ordered to, and did, carry the money to a restroom in the back of the service station. Appellant followed him into the restroom and took the money from him. Kelly was then ordered to face the wall. After he had done so he was ordered to put his hands behind his back. Appellant stated: "Move up a little higher" and then said, "I won't hurt you." Appellant's next move was to shoot Kelly in the back. He then left the scene. Kelly recovered and was a principal witness for the prosecution at the trial. He identified appellant as his assailant and described the incidents of the armed robbery and assault.

 Appellant took the stand at the trial and testified that he had been drinking heavily on the day of, and the day before, the crime and could not remember any of the events concerning the robbery. This, of course, would not excuse commission of the offenses. (Pen. Code, § 22.) Where, however, specific intent is a necessary element of the crime the jury may consider the fact of intoxication. However, the weight to be accorded the evidence of intoxication is a question of fact. (*People* v. *Yeager*, 55 Cal.2d 374, 391 [10 Cal. Rptr. 829, 359 P.2d 261]; *People* v. *Murphy*, 1 Cal.2d 37 [32 P.2d 635].) Testimony of prosecution witnesses raised a substantial conflict by describing actions showing that appellant knew what he was doing.

 Appellant's first contention is that the trial court committed prejudicial error by referring in its instructions on three occasions to a nonexistent "information" in referring to the robbery count. The accusation under which appellant was on trial was an indictment.

Reference to an "information" occurred during the court's instructions stating the rule that specific intent is a necessary element of the crime of robbery. Appellant's contention is that the reference left the impression with the jury that there was another accusatory pleading for robbery in existence. The contention is without substance. From the context of the instruction it is obvious the charge of robbery referred to by the judge was that for which the defendant was on trial and not some other offense. The mistake was either a slip of the tongue or clerical misprision in a written instruction. The jury could not possibly have been misled, if indeed any of its members knew the distinction between an indictment and an information. Realization by appellant's trial counsel of the insignificance of the mistake seems implicit

in the fact that he neither called the court's attention to the mistake nor made any objection thereto at the trial.

Appellant's next contentions relate to claimed misconduct of the deputy district attorney. During his argument this officer, in assigning a suggested reason for the act of appellant in shooting Kelly stated, ''Ladies and gentlemen, this conviction makes him [defendant] a habitual criminal, which he is, and he couldn't leave that witness, sixteen year old boy or not, and the easiest way . . . was to shoot him in the back and to kill him.'' Appellant contends that reference was prejudicial error since Penal Code section 644 ''places the responsibility as to habitual criminality solely with the court and not the jury.''

There was no impropriety in argument by the district attorney that the shooting of the victim was an act prompted by the motive of disposing of him as the only eyewitness to the crime. Particularly is this true in view of appellant's contention that he was incapable of forming a specific intent due to intoxication. Evidence of appellant's prior convictions was properly before the jury, having been received in evidence for impeachment purposes on cross-examination and in proof of the charge of possession of a gun by an exconvict. (*People* v. *Raquel*, 125 Cal.App.2d 384 [270 P.2d 528]; *People* v. *DePrima*, 172 Cal.App.2d 109 [341 P.2d 840].) Under the circumstances present here, therefore, the district attorney's reference to appellant as a habitual criminal should not be deemed calculated to inflame the jury but rather as fair comment to convince the jury that the shooting was not the product of alcohol-induced ''trigger-happiness'' but done deliberately to escape detection. (See *People* v. *Bryant*, 154 Cal.App.2d 121, 129 [315 P.2d 734].)

Again, and even assuming an impropriety in the characterization which we do not believe to exist, it is to be noted that no objection or request that the jury be admonished, timely or otherwise, was made at the trial, absent which misconduct of the type here involved will normally be regarded as waived and not a ground for reversal. (See *People* v. *Rosson*, 202 Cal.App.2d 480, 491 [20 Cal.Rptr. 833], where the district attorney referred to defendant as a ''con'' man.)

Appellant's next contention also involves statements of the district attorney said to inject his personal opinion of the guilt of the accused into the case. Appellant correctly states the rule that statements by a prosecuting attorney, not based

upon legitimate inferences from the evidence, that he has personal knowledge of defendant's guilt, or to the effect that he would not conduct the prosecution unless he believed the defendant to be guilty are misconduct. (*People* v. *Kirkes*, 39 Cal.2d 719, 723 [249 P.2d 1]; *People* v. *Warren*, 175 Cal.App.2d 233 [346 P.2d 64].) In *People* v. *Kirkes, supra,* the prosecutor had stated he knew and had known prior to the trial that defendant was guilty and he would not have participated in the prosecution otherwise.

The court in reversing for misconduct, quotes from an earlier case, *People* v. *Edgar,* 34 Cal.App. 459, 468 [167 P. 891], and says, on pages 723-724: "When the district attorney declared that he would not prosecute any man he did not believe to be guilty he thereby wrongfully placed his personal opinion of the guilt of the defendant in evidence in the case. He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged [citation]; but his declaration to the jury that he would not prosecute any man whom he did not believe to be guilty was tantamount to an assertion that he believed in the guilt of the defendant at the very inception of the prosecution; and necessarily such belief must have been founded upon the result of the district attorney's original and independent investigation of the charge, and therefore in all likelihood was based, in part at least, upon facts which did not appear and which perhaps could not have been shown in evidence."

We have tested the statements by the district attorney criticized here, *reading them in context,* and within the rule stated above. With one exception to be noted below we do not consider them to have been improper.

The statement, "This is not, in my opinion, a proper case for trial in that there are no conflicts in the evidence," followed by the statement, "therefore, there isn't much for me to say" were merely expressions that the evidence had proved appellant's guilt conclusively.

The next portion claimed improper (stated *in context,* with the portion objected to emphasized) was "Mr. Salamy [defendant's trial counsel] . . . undoubtedly will not make any contention that this was not the gun with which George Kelly was shot, because Harry Johnson [criminologist of the State Bureau of Criminal Identification] says it was the gun. *That is good enough for all of us,—and he*

*took a picture so that you can see for yourself, if you like. The fact that he said it was the gun is good enough for me."* This is argument from the evidence and is proper.

The statement, "Certainly as a prosecutor it is my job to enforce the law where the law has been violated and I have the man who did it, but not to play games to get a conviction of somebody whose guilt is not proved by evidence which is convincing beyond a reasonable doubt, and about that you shouldn't have any doubt," was but a correct statement of the function of a prosecutor. It was not, as appellant contends, a placing by the deputy district attorney of his personal opinion of the guilt of appellant in evidence.

Trial counsel for appellant having challenged the veracity of two peace officers by claiming that their testimony deviated from their reports, the deputy district attorney observed: "Mr. Salamy said that makes him a liar. He doesn't say he might be mistaken. He called Sergeant Radford a liar. Well, it is his conscience if he is going to be bandying about people's reputation and character so lightly. He knows the importance of such an accusation to a peace officer." He also stated in this connection (and this is the statement which is objected to): *"I vouch for* the credibility of Inspector Warner and Sergeant Radford 100 percent." (Italics added.)

It has been held not improper for a district attorney in refutation of a charge by the defense attorney that a police officer was lying to state in rebuttal: "Those people came in and told you the truth." (*People* v. *Rosoto,* 58 Cal.2d 304, 365-367 [23 Cal.Rptr. 779, 373 P.2d 867].) But to "vouch" for is, by dictionary definition, to *guarantee.* It is stronger than a mere expression of opinion of veracity and it falls within the class of statements to be categorized as "placing the district attorney's personal opinion in evidence."

All of the other statements cited by appellant as misconduct were so clearly proper comments on the evidence that they need not be noted herein.

Since we do find the act of the deputy *in vouching for* the credibility of certain of his witnesses to be improper, the question arises: Was it prejudicial? It was not objected to and the court was not requested to admonish the jury.

It is stated in *People* v. *Rosoto, supra,* at page 357: "Misconduct in argument may not be assigned on the appeal if it is not assigned at the trial, unless the misconduct con-

tributed to the verdict or was so unredeemable that nothing whatever would have cured it. [Citation]''

We think that the remark here, though improper, was not so flagrant an abuse of propriety that it could not have been cured by a prompt admonition to the jury, had one been requested. (*People* v. *Warren,* 175 Cal.App.2d 233 [346 P.2d 64].) Nor could it have been a contributing factor in the jury's verdict.

The evidence is not closely balanced on the question of the guilt or innocence of appellant. Evidence of his guilt was overwhelming. There has been no miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The last contention of appellant is the claim of double punishment arising from that portion of the judgment which prescribed the term of imprisonment under count two, robbery, shall run consecutively with the term under count one, assault with intent to commit murder, and that the term under count three, possession of a gun by a felon, shall run consecutively with count two.

Penal Code, section 654 provides, in part: ''An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one. . . .''

This court, recently, in *Downs* v. *State of California,* 202 Cal.App.2d 609 [20 Cal.Rptr. 922], had occasion to consider the rule and tests to determine the question of multiple punishment as set forth in *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], and *People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1], and, borrowing the language of Justice Traynor in the *Neal* case (on p. 19 thereof), we stated in our opinion in *Downs* (p. 612):

'' 'If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated.' ''

We then noted that Justice Traynor had pointed out that few crimes are the result of a single *physical* act, and had said that the code section encompasses and prohibits double punishment for a course of conduct constituting even

more than one "act" in the ordinary sense *if the transaction is indivisible.* But the *Neal* opinion adds:

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. *If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.*" (Italics added.)

In the *Downs* case, *supra*, it clearly appeared the burglary and robbery there perpetrated involved a single indivisible act and we held double punishment had been imposed. We are not convinced here, however, that the acts were indivisible. The robbery had been accomplished prior to the assault, the facts showing there was a threat of force (by use of a gun) sufficient to put the victim in fear; he was put in fear and the robbery was thereby accomplished. The circumstances were such that the shooting could have been an afterthought. Strangely enough appellant's theory of defense—that he was so intoxicated he was incapable of a preconceived plan—lent added support to this theory. Thus we have the unusual circumstance of the prosecution urging a plan to kill, *although not necessarily a preconceived one,* while the defense suggests facts arguing against indivisibility. From the evidence appellant may have been sober enough to know what he was doing but drunk enough to make and act upon sudden and judgment-lacking impulse. Appellant was therefore properly punished for the offenses of robbery and assault with intent to commit murder. In *In re Chapman,* 43 Cal.2d 385 [273 P.2d 817], the facts were very similar, the only distinction being that there the victim, having been robbed, was shot while running away. It was held that the trier of facts was warranted in concluding that the offenses were divisible transactions. (See also *Seiterle* v. *Superior Court,* 57 Cal.2d 397 [20 Cal.Rptr. 1, 369 P.2d 697].)

In *Neal* v. *State of California, supra,* page 20, the court says: ". . . In *People* v. *Slobodion,* 31 Cal.2d 555, 561-563 [191 P.2d 1], however, we sustained convictions for sex perversion and lewd and lascivious conduct, *even though both acts were closely connected in time and a part of the same criminal venture* since the act giving rise to the lewd and lascivious conduct was separate and distinct and was not incidental to or the means by which the act of sex perversion was accomplished." (Italics added.)

The case of *People* v. *Aldridge,* 197 Cal.App.2d 555 [17 Cal. Rptr. 304], relied upon by appellant is distinguishable. There the force which established the robbery was the same force which proved the assault. Appellant contends that because the victim Kelly was ordered into the restroom, the money taken from him there, and these two acts were immediately followed by the shooting, a single indivisible act is necessarily implied. We do not so regard it. It is possible that appellant may have had this shooting in mind at the outset. But also that may *not* have been his intent. The completion of the robbery was followed by the assurance to the victim to turn around and face the wall and he would not be harmed. The intent to kill may have been formulated then and only then.

As regards the contention that the sentence under count three, possession of a gun by a felon, was indivisible, the evidence shows that appellant had obtained the gun at a bar on Rio Linda Boulevard on the afternoon of November 1 or 2, 1961. The robbery did not occur until 11 p.m. on November 2d. In the meantime appellant had once lost possession of the gun and had regained it. He had been gun-toting for hours and had once fired the gun in his brother's home. These facts were sufficient to justify sentencing on both the robbery and possession counts. (*People* v. *Israel,* 91 Cal.App.2d 773 [206 P.2d 62].)

The order denying motion for new trial, being nonappealable (Pen. Code, § 1237), is dismissed. The judgment is affirmed.

Schottky, J., and Friedman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 3, 1963.