[Crim. No. 8301. Second Dist., Div. Three. Apr. 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND EDWARD AMIOTTE, Defendant and Appellant.

178

 

Lionel Richman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—Defendant appeals from a conviction, after court trial, of possession of narcotics in violation of section 11500 of the Health and Safety Code.

This record shows that in the early afternoon of October 17, 1961, two Los Angeles police officers observed defendant leave a residence located at 603 Marine Way which they, in the course of a narcotics investigation, had placed under surveillance. As he prepared to depart in his car, the officers approached the driver's seat and asked defendant his name and occupation. He told them that his name was Jugan and that he was a merchant seaman aboard a coastwise cement ship from Seattle. He wore a white T-shirt. One of the officers noticed that there were hypodermic needle marks visible on his left elbow and that his eyes were extremely pinpointed. Believing defendant to be under the influence of a narcotic, the officers took him into custody. At the police station defendant told them that he had gone to 603 Marine Way "to score some narcotics" but was unsuccessful; that he lived at a motel where he shared a room with another, and that he was expecting a delivery of heroin to this location. In the course of a search of defendant's room the following day, the officers discovered atop an empty suitcase on an upper shelf of the room's closet a shaving kit from which they removed a bottle containing some white tablets. Chemical analysis revealed these tablets to be Amidone, a narcotic. In that same closet about 6 feet below the upper shelf was another large suitcase containing another shaving kit, personal effects and papers bearing the name Don Perkins.

Defendant testified that he had recently been discharged

from state prison, that he had shared the room with Perkins for 3 weeks but that he had neither suitcase nor shaving kit, and that he had not used narcotics since his release. He denied knowledge of the presence of the Amidone, but thought that his roommate was a user.

Defendant claims that the Amidone found in his room was the inadmissible product of an unreasonable search. ■ To begin with, the arrest was not unlawful. The arresting officers were entitled to infer from their observation of defendant that he had recently possessed narcotics in violation of Health and Safety Code, section 11500. (*People* v. *Rios,* 46 Cal.2d 297 [294 P.2d 39].) Thus the officers had probable cause to arrest for the offense committed earlier.

■ The legality of the search does not depend upon its being incidental to the arrest because there was sufficient evidence to support a finding by the trial judge that defendant had given the officers permission. Officer King testified that on the day after defendant's arrest he and his partner inquired of defendant whether they could go to the motel and search his room. Defendant agreed on the condition that the officers not "do anything with the hypodermic outfit" which he kept there. When defendant testified at the trial he did not deny this conversation with the officers. The bare fact that he was then in custody would not render involuntary the permission given.

■ Defendant argues that where the arresting officer fails to take the prisoner before a magistrate "without unnecessary delay" as required by Penal Code, section 849, any consent given during this period of delay is involuntary as a matter of law. The record does not show when defendant was first taken before a magistrate and hence does not furnish the premise of defendant's argument. Even if we assume defendant had not been taken before a magistrate prior to his conversation with the officers on the day after his arrest, we cannot say that this delay as a matter of law rendered defendant incapable of giving operative consent to search his premises. It is not impossible or inherently improbable that a person in custody will consent to a search, and whether he actually did so was a question of fact for the trial judge. It is not the function of this appellate court to reweigh the evidence and overrule the trial court's finding. The fact of defendant's confinement would be one of the relevant circumstances to be considered by the trial court in determining whether he actually consented. (*People* v. *Davis,* 178 Cal.App.2d 887 [3

Cal.Rptr. 465]. Cf. *People* v. *Kendrick,* 56 Cal.2d 71, 85 [14 Cal.Rptr. 13, 363 P.2d 13].)

Defendant argues that the evidence is insufficient to show that he knew of the presence of the drug. ■ Knowledge of its presence and narcotic character is an essential element of the crime of possession. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) ■ ■ Possession need not be exclusive, and guilty knowledge may be circumstantially shown. ■ The circumstantial evidence here goes further than the finding of narcotics in an accessible place in a single room occupied by defendant. (See *People* v. *Elliott,* 186 Cal.App.2d 178, 185 [8 Cal.Rptr. 795].) Defendant was at the time of the arrest, by his own admission, a current user in search of narcotics. He told the arresting officers that he was expecting a delivery of heroin to his room. When first questioned he falsely informed them as to his name and occupation. Further, from the evidence that the shaving kit containing the contraband was separate and apart from another shaving kit found in a suitcase belonging to his roommate, it is a fair inference that the former kit was defendant's. The coincidence of the foregoing circumstances reasonably justifies the trial court's findings that defendant knew the Amidone was there and knew of its narcotic character.

■ Defendant contends that he should be given a new trial because he was not adequately represented by counsel. The record shows that defendant was represented by a privately employed attorney, who could only have appeared at the request of defendant himself. Defendant's counsel made and argued a motion to set aside the information under Penal Code, section 995, which motion was denied. Defendant thereupon pleaded not guilty. Counsel then requested, in defendant's presence, that the court either reconsider defendant's motion to reduce the bail or that the case be submitted immediately upon the preliminary transcript and defendant's testimony. The prosecution agreed to such a submission. Defendant then was asked if he understood his right to jury trial and whether he waived it. To each question he answered, "Yes." An oral stipulation was then made in defendant's presence for submission of the People's case on the preliminary transcript. After a recess defendant was called as a witness and testified in response to his attorney's questions that he shared the motel room with Don Perkins, that he did not know there was any Amidone or any other narcotic in the room or in the closet, and that Perkins' effects were in the

room. He was then cross-examined by the prosecutor. Defendant's counsel made a brief argument. The court then commented briefly upon the evidence and found defendant guilty. The court also found the allegation of a prior felony conviction to be true upon proof of a record of the Oregon State Penitentiary, produced by the prosecution.

Defendant's counsel then made a motion for a new trial and also requested a probation report. At a subsequent hearing, at which defendant was present with counsel, the motion for new trial was denied and defendant was sentenced. Counsel strongly urged a jail sentence but the court concluded, on the basis of the information contained in the probation report, that defendant should be sentenced to state prison. In commenting upon counsel's argument, the trial judge stated, "You have well represented him. . . ." Counsel then requested and the court granted a two-week stay of execution.

The attack upon the conduct of defendant's trial counsel is in essence no more than a hindsight criticism of the trial tactics employed. Counsel on appeal argues that this case "cried for a jury trial."

Before undertaking to criticize the conduct of a defense attorney, it is important to recall that only that attorney knows what was disclosed by counsel's own investigation of the facts and what information and wishes the defendant himself conveyed in confidence to his counsel before trial. Whether it was preferable to object to the district attorney's cross-examination, which went beyond the scope of the direct, or whether to give the court the benefit of defendant's answers to the questions, was a decision on which the trial lawyer was required to exercise an on-the-spot judgment.

The rule is well settled that retrospective criticism of the way the defendant's lawyer handled the case is not sufficient to sustain the claim that defendant lacked proper representation. (*People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457]; *People* v. *Prado,* 190 Cal.App.2d 374, 377 [12 Cal.Rptr. 141].) The record of this case contains no intimation of any lack of diligence or fidelity on the part of counsel, or any indication that defendant disapproved of anything that was done by counsel at the time it was done.

The fact that defendant, through counsel, expressly waived his statutory right to a five-day delay between plea and trial (Pen. Code, § 1049), does not show either a lack of adequate representation or a deprivation of any other funda-

mental right. (*People* v. *Severino,* 122 Cal.App.2d 172, 181 [264 P.2d 656].)

Finally, defendant contends that the cross-examination of the defendant by the district attorney was so prejudicial as to require a reversal even though the questions were not objected to at the trial. Some of the questions related to the conversation between the defendant and the officers, parts of which he admitted and other parts he denied. Other questions pertained to defendant's familiarity with Amidone (which he denied having heard of) and Dilaudid (which he admitted having used).

Here we have a defendant who admittedly was a user of narcotics, being tried before a judge without a jury. If any of these questions carried any improper innuendo as to defendant's character and past conduct, we cannot believe that the questions prejudiced the judge against him so as to influence the court's decision.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 12, 1963.