[Crim. No. 3440. Third Dist. Aug. 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD
BIRDWELL, Defendant and Appellant.

Donald Birdwell, in pro. per., Theodore B. Lee, under appointment by the Court of Appeal, and J. David Hertzer for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward Hinz, Jr., and Kelvin L. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from judgment of conviction of the crime of attempted murder.

### QUESTIONS PRESENTED

1. Was defendant given inadequate legal representation and hence denied his constitutional right to the aid of counsel?

2. Do *Escobedo, Dorado, Miranda* and *Aranda* apply to Brinsfield's extrajudicial statements implicating defendant?

3. Was the evidence sufficient?

4. Was there double punishment in the imposition of concurrent sentences for (a) armed robbery and attempted murder, (b) armed robbery and conspiracy to commit robbery?

### RECORD

A three-count information was filed against defendant and one LeRoy Brinsfield. The first count charged them with the crime of robbery; the second count with the crime of

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

attempted murder; and the third count with the crime of conspiracy to commit robbery with a shotgun. Both defendants pleaded not guilty to all three counts. However, defendant withdrew his plea of not guilty to count one (robbery) and pleaded guilty thereto. The court found the offense to be robbery in the first degree and sentenced defendant to state prison for the term prescribed by law, commitment to await the termination of the trial on the other two counts. At the opening of that trial, defendant changed his plea to count three (conspiracy to commit robbery) from not guilty to guilty. Brinsfield then changed his plea to counts one and three to guilty. The trial then proceeded as to count two (attempted murder). The jury found both defendant and his codefendant Brinsfield guilty. Defendant was then sentenced under counts two and three to state prison for the terms prescribed by law. Defendant[1] appealed from the judgment of conviction under count two.[2]

### THE EVIDENCE

Armando Alvarez was the night manager of Hodge's Richfield Station in Sacramento, and was alone there at the time in question. Defendant entered carrying a shotgun, pointed it at Alvarez and said "This is a holdup. Don't look at my face, turn around." Defendant then got behind Alvarez and held the gun on him. Defendant then asked Alvarez where the money was and was told that it was in the cash boxes outside the station. Defendant took the keys from Alvarez's belt, signaled for Brinsfield, who was outside. Brinsfield entered, took the keys and then went to the cash boxes by the pumps and began emptying them.

Meanwhile, defendant continued to cover Alvarez with the shotgun and asked him if there was any more money around. Alvarez replied "No." Defendant then took Alvarez's cigarette lighter from him and asked "Where's your wallet?" On being told that it was in Alvarez's rear pocket, defendant removed it. Defendant then said "Well, you been pretty good up to now, but I got your name and address, your wallet, and I know where you live. If you ever try to identify me, I come and kill you."

Then a customer drove up to the station. Defendant told Alvarez to go outside and said "I got a gun with me, so don't

---

[1] Apparently Brinsfield has not appealed.

[2] The appeal was dismissed pursuant to rule 17(a), California Rules of Court. However, defendant's petition for relief from default was granted and the appeal reinstated.

forget it.'' The customer only wanted cigarettes which he obtained from the cigarette machine and left.

Defendant then approached Alvarez with the shotgun and told him to go around to the rear of the station. Arriving there, Alvarez started to lift his head up to look at Brinsfield. Defendant said ''Don't get smart, put your head down'' and told Alvarez to go into the restroom. Alvarez went to the back of that room and stood facing the wall. Defendant then placed the shotgun close to Alvarez's head, saying, ''I ought to shoot you in the head.'' Alvarez replied ''What for? I haven't give you no trouble. You got all the money, the money is yours.'' Defendant lowered the gun and said ''Well, you stay in here for ten minutes and don't come out.'' Alvarez then heard a click which he thought was from the gun and abruptly started to turn around. Then he was struck in the back by a shot from the shotgun. On cross-examination, Alvarez testified that when defendant first produced the gun, the hammer was closed and that he heard no clicking sounds until he heard the one in the restroom. On being asked to compare the click that he had heard with the clicking sound produced in the courtroom by the falling of the hammer on the shotgun, he stated that the two sounds were not the same. At a lineup at the hospital Alvarez identified defendant as the man who had robbed and shot him. When interrogated the day after the robbery, defendant stated that he had no recollection of being in Sacramento the morning of the robbery. Further prosecution evidence will be discussed later.

Defendant testified that about 5 p.m. on the evening preceding the holdup, he began drinking beer, consuming about 20 cans. Shortly before the holdup, he acquired a shotgun. He said that he had ordered Alvarez into the restroom and was standing in the door, holding it open with one leg, with the shotgun in his right hand. The hammer on the gun was not back. He then shouted to Brinsfield to go back into the office and get the wallet. At that time he put the shotgun under his arm, with his hand still on the trigger or the hammer. He started to light a cigarette with the lighter he had taken from Alvarez. The gun then slipped from his hand and when he grabbed for it, it accidentally discharged. He did not intend to shoot Alvarez. On cross-examination, he stated that he had the specific intent of robbing the station and that he was ''not too drunk.''

Brinsfield testified to drinking with defendant; that

defendant had purchased a shotgun and the two of them drove to the service station; that he had taken the money from the cash boxes and then saw defendant standing in the doorway of the restroom. Defendant told Brinsfield to get the wallet from the office. Thereafter, Brinsfield heard a shot and started to walk towards their car where he was joined by defendant who told him only that the man was shot.

## 1. AID OF COUNSEL

Defendant contends that he was denied adequate legal representation in that his counsel failed to investigate and consider two defenses which defendant might have had, namely, one, that defendant may have been legally insane at the time of trial, and, two, that because he had been drinking substantial amounts of alcoholic beverages during the day prior to the crime, the doctrine of diminished responsibility might have been open to him, and that either because of insanity or the effect of alcohol, he was not able to form the necessary intent to kill to make his act attempted murder.[3]

■ Defendant "has the burden . . . of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' " (*People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) In his brief, defendant contends that he told his counsel prior to trial of his claimed impaired mental condition and of his drinking and asserts that investigation by counsel would have indicated witnesses who could have testified concerning defendant's mental condition. Defendant states further that after his conviction, he was committed to the State Medical Facility at Vacaville, where he remained for several years and asks that the court take judicial notice of this fact. He also moved to augment the record in this case by the records of the California Medical Facility at Vacaville and of Folsom. We see no reason for doing so.

Defendant's allegations find no support in the record, nor is defendant's mental condition at some period subsequent to the offense relevant to the issues on this appeal. ■ Moreover "where the brief contains matters on which the record fails to furnish any light such matters cannot be considered on appeal." (*People* v. *Janssen* (1965) 237 Cal.App.2d 363, 366-367 [46 Cal.Rptr. 866].)

■ "[A]n appellate court will not consider assignments

---

[3]These contentions are limited to the attempted murder charge and do not relate to the other two charges.

of error based upon asserted matters not shown by the record and supported by nothing more than statements in an appellant's brief." (*People* v. *Lindsay* (1964) 227 Cal.App.2d 482, 510 [38 Cal.Rptr. 755] ; cf. *People* v. *Shaffer*, 182 Cal. App.2d 39, 42-46 [5 Cal.Rptr. 844].)

There is nothing in the record to indicate that defense counsel was not aware of the defenses of insanity and diminished responsibility open to a defendant in a proper case. An examination of the record discloses that defense counsel represented defendant with skill and ability. Applicable here is the following from *People* v. *Amiotte* (1963) 215 Cal.App. 2d 176, 181 [30 Cal.Rptr. 102] : "The rule is well settled that retrospective criticism of the way the defendant's lawyer handled the case is not sufficient to sustain the claim that defendant lacked proper representation. [Citations.] The record of this case contains no intimation of any lack of diligence or fidelity on the part of counsel, or any indication that defendant disapproved of anything that was done by counsel at the time it was done."

Insanity or diminished responsibility at the time of the offense is wholly unsupported by the record. Defendant testified that while he had been drinking he was "not too drunk" that he went to the gas station with the specific intent of committing the robbery and indicated that he fully knew what he was doing all through the robbery. For example, he testified that he told Alvarez that if he tried to identify him, defendant would return and kill him and that he said that to scare Alvarez. Defendant, at the trial, was coherent and responsive and his memory was not impaired. He was able to recall with particularity his conduct prior to, during and after the commission of the crime. As to the shooting, he had just stated that he ought to shoot Alvarez and when Alvarez started to turn around where he could see defendant's face, defendant then shot him. The evidence clearly supports the inference that defendant intended to shoot Alvarez if necessary to prevent him from getting a good look at defendant.

In *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487], a case relied upon by defendant, it is stated that to justify relief on the ground of improper legal representation by counsel " 'an extreme case must be disclosed.' . . . It must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.' " There was no such situation here.

## 2. BRINSFIELD'S EXTRAJUDICIAL STATEMENTS

After the defense had rested, Detective Walter H. Soski of the Sacramento Police Department was called by the prosecution, apparently to impeach Brinsfield's testimony that defendant, on emerging from the restroom, did not discuss the shooting other than to say that the man was shot. Soski testified that he interrogated Brinsfield at about 4:30 of the morning of the shooting. He did not inform Brinsfield of his right to counsel. Brinsfield told Soski that after the shooting, defendant ran up to him and said: "The fellow panicked and tried to slam the door in my face. I tried to hit him with the gun, but could not get to him, so I had to shoot him." The reporter who was present at this interview and made a transcript of it, testified that Brinsfield stated that defendant came running up to him and said ". . . [T]he attendant tried to jump him and that he slammed the door in his face and tried to jump him, and that he tried to hit him with the butt of his gun, but he couldn't, and then he shot him. . . ." The court informed the jury that these statements could only be used as evidence against Brinsfield and not against defendant.

The police officer expressly admitted that defendant Brinsfield, before making his confession of the robbery and his statements of what defendant told him concerning the shooting, was not advised of his right to a lawyer. The record is silent as to whether he was advised of his right to remain silent. As pointed out hereinafter, at the time of the trial the failure of the police officer to inform Brinsfield as to either of these matters would not have made Brinsfield's extrajudicial statements inadmissible. Nor would the fact that those statements implicated defendant have made them inadmissible, where the court properly, as here, instructed the jury that they could not be used as evidence against defendant.

In *People* v. *Rivers* (July 7, 1967) 66 Cal.2d 1000 [59 Cal.Rptr. 851, 429 P.2d 171], the Supreme Court held that where a judgment had become final prior to *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694. 86 S.Ct. 1602, 10 A.L.R.3d 974] and the remittitur is recalled and the appeal reinstated, the rules of *Escobedo, Dorado* and *Miranda* do not apply to such reinstated appeals. This case was tried in November 1962. The judgment became final by the dismissal of the appeal on October 28, 1963. Recall of the remittitur and reinstatement of the appeal occurred on

September 1, 1966. Obviously, had the appeal not been dismissed in 1963 and had the appeal then proceeded, the rules of *Escobedo, Dorado* and *Miranda* would not have applied, as they were not yet in existence. The same is true of the rule of *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]. The reasoning of *People* v. *Rivers* applying to *Escobedo, Dorado* and *Miranda,* necessarily applies to *Aranda.* As pointed out in *Rivers, supra,* at page 1004, quoting from *In re Lopez,* 62 Cal.2d 368, 381 [42 Cal.Rptr. 188, 398 P.2d 380], to apply to a reinstated appeal rules which could not have applied prior to the reinstatement of the appeal " 'would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial. . . .' "

 Therefore, in view of *People* v. *Rivers, supra,* we are not entitled to apply to this appeal the rules of these later cases, but must consider the appeal in the light of the rules existing in 1963. At that time, there was no requirement that the showing required by *Escobedo, Dorado* and *Miranda* be made in order for the extrajudicial statements of a defendant to be admitted in evidence, and the rule then also was " '[E]vidence of a confession or admission by one of several codefendants is admissible under proper instructions limiting its consideration to the declarant, even though such evidence includes statements which tend to incriminate the codefendants.' " (*People* v. *Ketchel* (1963) 59 Cal.2d 503, 533 [30 Cal.Rptr. 538, 381 P.2d 394], quoting from *People* v. *Pickens* (1961) 190 Cal.App.2d 138, 148 [11 Cal.Rptr. 795]; see also *People* v. *Turville* (1959) 51 Cal.2d 620, 636 [335 P.2d 678]; *People* v. *Rhinehart* (1961) 196 Cal.App.2d 240, 241-242 [16 Cal.Rptr. 391].)

In the case at bench, the court fully instructed that Brinsfield's statements were not binding on defendant and were not to be considered by the jury as applying to defendant. Thus, at the time of the trial and of the original appeal, the admission of Brinsfield's statements accompanied by the court's instruction that they were not to be used against defendant did not constitute error.

### 3. The Evidence Was Sufficient

 Basing his contention that the evidence did not show intent on defendant's part to shoot Alvarez, defendant contends that the evidence is insufficient to support his conviction on the charge of attempted murder.

Defendant admitted shooting Alvarez with a shotgun. His sole defense was that the shooting was accidental and that he did not intend to shoot. However, his aggressiveness and the nature of the attack prove otherwise. Defendant admitted that he went to the service station with a loaded shotgun with the intent to commit robbery. While committing the robbery, defendant attempted always to remain out of Alvarez's view except at first arrival. He told the latter ''Don't look at my face.'' At all times he kept the gun pointed on the victim. He said to Alvarez ''Well, you been pretty good up to now [indicating that Alvarez had not tried to see his face]. . . . If you ever try to identify me, I come and kill you.'' When the customer drove up, he reminded Alvarez ''I got a gun with me, so don't forget it.'' At the back of the station when Alvarez started to lift his head up, thereby getting a view of Brinsfield and possibly of defendant's face, he said ''Don't get smart, put your head down.'' In the restroom, as the victim stood facing the wall, defendant said ''I ought to shoot you in the head.'' Defendant kept his finger on the trigger and hammer at all times. Moreover, although he claimed that the hammer was not fully back, he testified that it was ''back part way.'' When, on hearing a click Alvarez started to turn around which would have given him a view of defendant's face, the gun was fired. The jury could very well conclude that it was not reasonable to believe defendant's story that at that moment when for the first time Alvarez was about to see defendant's face that the gun was accidentally discharged. Moreover, the jury could also have fairly concluded that his explanation that the gun slipped out of his hand while he was holding it with his finger on the trigger and his thumb on the half-cocked hammer, was not reasonable. Particularly is this so when on interrogation the next day, he claimed not to remember being in Sacramento at the time of the robbery. The only reasonable inference from defendant's actions is that he shot Alvarez to keep him from being able to identify defendant.

The total distance from the door of the restroom to the wall in front of which Alvarez was standing was only seven feet. According to defendant's testimony, when the shot was fired he was standing in the doorway holding the door open with his leg and with the gun pointing at Alvarez. He testified that when he told Alvarez to stay there 10 minutes ''I had the gun pointed up at him.'' While defendant now claims he had ''backed away'' from Alvarez intending to leave, he could

not have backed very far in that narrow space and still be standing in the doorway. As we have shown, there was ample evidence from which the jury could have found that such intent existed.

 "[I]ntent is rarely susceptible of direct proof and ordinarily must be inferred from a consideration of all the facts and circumstances shown in evidence." (*People* v. *Lyles* (1957) 156 Cal.App.2d 482, 486 [319 P.2d 745].)

4. CONCURRENT SENTENCE:

(a) Armed Robbery and Attempted Murder.

 Defendant contends that the imposition of concurrent sentences for these two crimes constitutes double punishment prohibited by section 654, Penal Code. That section, in pertinent part, provides: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

In *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal. Rptr. 607, 357 P.2d 839], cert. denied (1961) 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708] the Supreme Court said: "'If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated.'" Section 654 applies only if the transaction is indivisible. (*Neal* v. *State of California, supra,* p. 19.)

Preliminarily, it should be pointed out that neither of these crimes is an included crime in the other. In *In re Chapman,* 43 Cal.2d 385, 387 [273 P.2d 817], it was held that when the assault is not a means of perpetrating the robbery but is an act that follows after the robbery is completed the defendant is guilty of two punishable acts. Such is the situation in the case at bench. The use of the gun in the robbery had served its purpose and the robbery had been completed when the shooting occurred. Defendant contends that the robbery was not complete at this time because Brinsfield had not yet picked up Alvarez's wallet as requested by defendant. However, defendant had completed the act of taking it from Alvarez's person (apparently, defendant had accidentally left the wallet in the office). Alvarez was in no position to prevent Brinsfield from picking up the wallet. The situation here is comparable to that

in three cases where sentences for both robbery and crimes involving the use of a gun after robbery completed were upheld. In *People* v. *Houghton* (1963) 212 Cal.App.2d 864 [28 Cal.Rptr. 351] consecutive sentences for robbery and assault with intent to commit murder were imposed. Defendant entered a gas station exhibiting a revolver. He ordered the attendant to remove money from a cash register. This the attendant did and was then ordered to carry it into the restroom. There, the defendant took the money from him, ordering him to face the wall and to put his hands behind his back. After stating that he would not shoot the attendant, he did shoot him in the back. The court said ''We are not convinced here . . . that the acts were indivisible. The robbery had been accomplished prior to the assault. the facts showing that there was a threat of force (by use of a gun) sufficient to put the victim in fear; he was put in fear and the robbery was thereby accomplished. The circumstances were such that the shooting could have been an afterthought.'' (P. 873.)

In *In re Chapman* (1954) 43 Cal.2d 385 [273 P.2d 817], consecutive sentences for robbery and assault with force likely to produce great bodily harm were imposed. There, the victim was held up by the defendant who showed him a gun. After handing over his wallet as directed, the victim started to run away. The defendant's confederate tackled the victim and the defendant hit him over the head with the gun. The court held ''the pursuit of the victim and the striking of him with the weapon constituted a separate crime of assault with intent to commit great bodily harm.'' (P. 389.)

In *People* v. *Williams* (1966) 244 Cal.App.2d 658 [53 Cal. Rptr. 392], the appellant entered a store armed with a shotgun. He commanded the owner to put the money from the cash register and from his wallet into a paper sack. The owner did. The appellant then asked the owner where the floor safe was. On being told there wasn't any, the appellant shot the owner. In upholding consecutive sentences for robbery and assault with a deadly weapon, the court held that the objective of the robbery had been accomplished and that the shooting was a subsequent, separate and differently motivated act. Such is the situation here.

In the cases cited by defendant, the shooting took place in the course of the robbery and was found by the court to be a part of the force used to consummate the robbery. Thus, in *People* v. *Ridley* (1965) 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124], the shooting took place before the robbers had

obtained possession of the loot. In *People* v. *Gilbert* (1963) 214 Cal.App.2d 566 [29 Cal.Rptr. 640], the owner was assaulted with a gun in an endeavor to force him to go to a rear room so that the robbers could rob the store unmolested. In *People* v. *Aldridge* (1961) 197 Cal.App.2d 555 [17 Cal. Rptr. 304] the defendant hit the store owner with a deadly weapon before she even knew that he intended to rob her. *People* v. *Houghton, supra,* 212 Cal.App.2d 864, 874, pointed out that in *Aldridge* "the force which established the robbery was the same force which proved the assault." In *People* v. *Allen* (1963) 220 Cal.App.2d 796, 799 [34 Cal.Rptr. 106], the assault occurred at the beginning of the robbery, the court found "The assault was the means by which the robbery was committed and both were the components of an indivisible criminal transaction." In the instant case, the transactions of the robbery and the shooting are divisible and hence the sentence for each crime was proper.

(b) Armed Robbery and Conspiracy to Commit Armed Robbery.

 The Attorney General concedes that the imposition of sentences for both conspiracy to commit armed robbery and armed robbery constitutes double punishment prohibited by section 654. In *In re Cruz* (1966) 64 Cal.2d 178 [49 Cal.Rptr. 289, 410 P.2d 825], the defendant was sentenced for conspiracy to commit grand theft and also for four counts of grand theft. The court held that section 654 prohibits sentencing a defendant for conspiracy to commit a crime and the crime itself where the conspiracy had no objective apart from that crime. In *People* v. *Keller* (1963) 212 Cal.App.2d 210 [27 Cal.Rptr. 805], the court determined that as the overt acts charged in the conspiracy count were the same acts upon which the substantive offense was based, the objective of the conspiracy was the same as that of the substantive crime and hence section 654 prohibited double punishment therefor. In our case, the overt acts charged in the conspiracy count were identical to those in the armed robbery count and it is obvious that the only object of the conspiracy was the robbery of the service station.

Under sections 182 and 213, the punishment for conspiracy to commit armed robbery and for armed robbery is the same. The sentence on the conspiracy count should be set aside. The convictions and sentences for armed robbery and attempted murder will stand.

Defendant's motion to augment the record is denied.

The judgments as to count one (armed robbery) and count two (attempted murder) and the sentences thereon are affirmed. The judgment on count three (conspiracy to commit robbery) is affirmed. The sentence thereon is set aside and the Adult Authority is directed to exclude from its consideration that purported sentence.

Friedman, Acting P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 11, 1967.