[Crim. No. 1081.    Fourth Dist.    Nov. 27, 1956.]

THE PEOPLE, Respondent, v. AUBRY RAY ROBINSON,
Appellant.

Aubry Ray Robinson, in pro. per., and Thomas Whelan, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was charged with burglary and seven prior convictions of felony (six burglary and one escape). He pleaded not guilty to the charge, admitted the prior convictions and a jury trial resulted in a verdict of guilty (burglary, second degree). A motion for new trial was denied.

The principal contentions on appeal are that the evidence is legally insufficient, particularly as to the identification of the defendant; that the district attorney and jury were guilty of misconduct; and the court erred in decisions on questions of law.

On July 14, 1955, the complaining witness was sun-bathing in her back patio. About 3 p. m. she walked to her bedroom and saw a man about to leave it through an opposite doorway. She could see his face but was unable to positively identify him at the trial. She described him as a dark individual with long straight hair. He had taken her wallet and change purse. She followed him across the street, screaming that she had been robbed. A Papermate pen, inscribed "General Cleaning Co." showing evidence of wear, fell from his pocket. Defendant was employed by that company from November, 1954, to May, 1955, and pens of this type were available to defendant and his customers. A Lieutenant Commander Fogg saw the complaining witness and pursued the defendant in his car around the corner where he entered a parked 1949-1951 green Pontiac. He took the license number and turned it over to the complaining witness. He saw defendant's full face and he was later shown defendant's photograph obtained from the police records and was asked if this resembled the burglar and he replied: "Resemble him—this is the man." At the trial he testified that defendant "resembles him more than anyone I've ever seen." The officers subsequently took the license number given to them by the complaining witness and checked by teletype with the Motor Vehicle Department to determine the ownership of the car and found it was registered to one Miss Lorene Lee, and gave her address. The next day the officers went there and saw a 1951 green two-door

Pontiac in front of her house. They questioned her and discovered she lived with defendant at that address and that on occasions defendant used this car. She stated at the time that it was possible defendant did use this car on the day of the claimed burglary, although at the trial she testified it was not out of her possession on that day. Defendant furnished other witnesses who also claimed they saw the car there during the period in question. Defendant was arrested and was asked if he committed the burglary described. He did not deny the accusation but stated: ''No, I'm not denying it but I'm not admitting it.'' He did not testify at the trial. His defense was an alibi. He presented an employee of the General Cleaning Company who testified that defendant was driving a 1936 Ford panel truck on the afternoon of July 14, 1955, around 4 p. m. ''as near as I can recall . . . I cannot exactly remember.'' He attempted to describe defendant's dress at the time, which he claimed was different from that described to him by the complaining witness when she inquired as to whether defendant was employed by that concern. Another such employee corroborated this testimony. Another witness, who was a fellow member with defendant in Alcoholic Anonymous, testified that defendant parked his truck at his place of business on *July 14th*, nearly all day, removed it at lunch hour and returned it; that it remained there until about 3 :45 p. m. when defendant left and took the truck with him. He testified he gave defendant a card of introduction to Marvin K. Brown Company about seeking employment on that day.

In rebuttal, an employee of the Marvin K. Brown Company was called. He testified that on Wednesday, *July 13,* defendant came in, about noon time, filled out an application for employment and was interviewed and came to work the following Saturday. He then testified that after defendant's arrest in September, 1955, defendant came to that office and asked to change the date on the application to read July 14, instead of July 13. He was asked why, and defendant said that ''if that date on there was as it was, that he had been in too much trouble, that it would definitely hang him.''

■ Defendant concedes the evidence shows that a burglary was committed, but contends the evidence of his identification is so weak as to constitute no evidence at all. The testimony of the Lieutenant Commander does show some identification of defendant as the one who entered the green Pontiac with the license number indicated. The fact that the

number taken turned out to be the number of the green Pontiac owned by Miss Lee, where defendant was staying, and the finding of a pen dropped by him bearing the name of his former employer, are circumstances corroborating this identification. Defendant's undenied statement, when accused, that he was not denying the commission of the crime but was not admitting it, might well be considered in connection with other evidence of defendant's guilt. His attempt to have the record, as to the date of employment, changed to another date so it would coincide with the testimony of another alibi witness, might well indicate a guilty knowledge and justify the jury in disbelieving his claimed alibi. Whether a witness is accurate in his description of an accused person is a matter for the determination of the trier of facts. The evidence of defendant's participation in the crime charged was sufficient. (*People* v. *Alexander*, 78 Cal.App.2d 954, 956 [178 P.2d 813].)

It is claimed the district attorney in the examination of the police officer about the robbery, stated facts not in evidence when he indicated it disclosed a certain license number. Objection was made to the question. The trial court immediately required proof of the facts which were sufficiently furnished. No prejudicial misconduct is indicated. (*People* v. *Kirkes*, 39 Cal.2d 719, 726 [249 P.2d 1].)

 At the conclusion of the evidence counsel for defendant, out of the presence of the jury, moved for a mistrial, based upon certain testimony of defendant who was sworn for that particular purpose. He testified in general that on this last morning of trial he came early, and before court took up he saw a certain lady juror give a traffic ticket, which she had been handed the day before by a traffic officer, to the clerk of the court; that he heard her say, in effect, "I would like to have you do something with it," and the clerk said he did not have time but would get someone to take care of it for her; that she gave him $6.00 bail money and then they talked to a police officer, a witness in the case, and he agreed to take care of it for her and defendant then accused the officer of currying favor of this juror. The clerk testified the juror did hand him a traffic ticket and $6.00 as bail money; that she said it was the last day to deposit bail and since she was on the jury she could not get away to deposit it; that he put the ticket in an envelope with the money and she asked to buy a stamp to mail it, but he could not sell her a stamp; that he volunteered to have someone take it to the traffic

office for her and out of the presence of the juror he asked the police officer to deliver it to the traffic desk. The officer corroborated this story and testified he did not know it was a traffic ticket of a juror until he later opened it and found the name of the juror on the ticket; and that at the time the motion was made the envelope, ticket and money were still undelivered. The trial court denied the motion. The claim is that by this conduct the officer was attempting to gain the favor of this juror, and since he was a witness, defendant did not have a fair and impartial trial.

We may well assume, from the testimony of the clerk and officer, that the juror was not apprised of the fact that the officer was in fact performing a favor for her. A request to the clerk alone to perform this service for her could not be said to be objectionable.

Further complaint was then made by defendant that he noticed the officers standing in the courtroom that morning and one or two jurors passed by them and remarked "that it will not take very long this time," or words to that effect, and one officer said "I don't think so either," meaning, as defendant construed it, that defendant had a previous trial where the jury disagreed and this time it would not take as long. The officer did say that one juror passed by him on this occasion and did remark that she had brought her tooth-brush so she knew she would not have to stay that night; that he felt this was only a passing remark and he placed no meaning to it. The remark may well have been understood to mean the colloquial one: "I have brought my rain coat so of course it will not rain." It does not appear that the juror was influenced by any such remark, that the defendant did not have a fair and due consideration of the evidence, or that he was prejudiced by it.

Mere conversations between the jurors and officers of the court do not *per se* amount to misconduct. Such conduct, although often unfortunate, does not in every case militate to the determination that a mistrial must be declared. The mere showing of such a communication does not raise a presumption that the jury was improperly influenced. Prejudice must be shown. (*People* v. *Woods,* 35 Cal.2d 504, 512 [218 P.2d 981]; *People* v. *Dunne,* 80 Cal. 34, 36 [21 P. 1130]; *People* v. *Cobb,* 45 Cal.2d 158, 161 [287 P.2d 752]; *People* v. *Phelan,* 123 Cal. 551, 567 [56 P. 424].)

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.