[Crim. No. 4510. Third Dist. Aug. 13, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT MARTINEZ, Defendant and Appellant.

John M. Hanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant was found guilty by a jury of two counts of robbery and one count of attempted murder. Imprisonment for the first robbery count and the attempted murder count were ordered to run consecutively. Imprisonment under the second robbery count was ordered to be concurrent with the terms under the other two. He appeals from the judgment of conviction.

## COUNT I

After dark on September 1, 1966, Robert Reed, Jr., a delivery man for Chicken Delight, proceeded to an address on Hernando Road in Sacramento County to deliver an order of food. He parked his vehicle and got out in order to determine which house was the one he was looking for. A man, subsequently identified as defendant, approached him and asked if he had the food. Reed said he was the man with the food and he turned to take it from the vehicle. Defendant placed a gun in his ribs and said, ''Give me your money.'' Reed gave him all his bills and most of the coin—approximately $83. This robbery was one of many involving Chicken Delight delivery vehicles.

## COUNT II

As part of an investigation of these robberies, Sergeant Richard Leeper of the sheriff's department, detective division, delivered an order which had been called into Chicken Delight in the evening of September 29, 1966. Sergeant Leeper drove

the delivery vehicle to 2356 Church Street, arriving at about 8 :30 p.m. Defendant stuck his head inside the stopped vehicle and pointed a gun at Leeper, informing him that he was the object of a robbery. Leeper gave defendant his wallet and his change. Defendant, believing that Leeper was withholding money from him, ordered him out of the vehicle in order to search him. As defendant was searching, Leeper grabbed defendant's gun and at the same time reached for his own gun. During the scuffle Leeper was shot twice. Defendant fled.

After the shooting, Officer Donald VanSkike was on his way to the scene when he noticed a 1956 Chevrolet being driven at an extremely slow rate of speed. He noticed that the young lady driving was paying close attention to an area on the eastern side of the road which was largely open field. The scene of the robbery and shooting was in this general area, and he thought she might be looking and waiting for the perpetrator.

VanSkike stopped the Chevrolet. As he walked up alongside, he noticed in plain view on the back seat a set of men's clothing. He ran a check for warrants on the driver, Carol Ann Herschelman. There was nothing outstanding against her.

While VanSkike was waiting for the results of the record check, he requested Officer Fonda, who had arrived in the interim, to get the registration certificate of the vehicle. In doing this Fonda was attacked by Carol. At this point she was arrested. The car was then searched, and a wallet was found in a pocket in the pants on the back seat. The wallet contained identification belonging to defendant—a driver's license with his picture was in it. About an hour after the robbery Sergeant Leeper was shown the photograph on the license. The next morning he was shown five photographs. He identified defendant from this group.

Defendant first contends that the wallet with the identification was obtained by means of an unlawful search and seizure.

We hold there was probable cause for the arrest of Carol and the subsequent search of the vehicle was lawful and proper. The officer who observed Carol driving the vehicle in the area of the robbery as heretofore related was justified in stopping the vehicle and making the related inquiries. The attack on the officer provided probable cause for the search of the vehicle as an incident to her valid arrest. (*People* v. *Harris*, 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225].)

Furthermore, there was no objection to the admission of the evidence claimed by defendant to have been illegally obtained. He may not now raise the matter for the first time on appeal. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Richardson,* 51 Cal.2d 445 [334 P.2d 573].)

■ Defendant claims error in the refusal of the trial judge to dismiss his appointed counsel on the second day of the trial. The record discloses defendant sought the dismissal of the public defender and the appointment of counsel of his own choice. When the court ascertained defendant was without funds to engage private counsel and that defendant did not want to represent himself defendant's request was denied.

In *People* v. *Hughes,* 57 Cal.2d 89, 98-99 [17 Cal.Rptr. 617, 367 P.2d 33], the Supreme Court stated: ''Section 987 of the Penal Code provides that 'If [the defendant] desires and is unable to employ counsel, the court must assign counsel to defend him.' While section 987a authorizes payment of compensation to private counsel appointed under section 987 from the general fund of the county, that authorization is declared to be operative only 'in a county or city and county, in which there is no public defender, or in a case in which the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused, . . .' In all other instances—including therefore the case at bench—it is the statutory duty of the public defender 'upon order of the court' to represent any defendant who is financially unable to employ his own counsel. (Gov. Code, § 27706, subd. (a).) ■ Our constitutional guarantee that an accused 'shall have the right . . . to appear and defend, in person and with counsel' (Cal. Const., art. I, § 13; Pen. Code, § 686), substantially similar to that accorded federal defendants by the Sixth Amendment to the United States Constitution [citation], is satisfied by the appointment and appearance of the public defender in behalf of the accused (the latter also being present). 'There is nothing in the law which entitles an accused to have the court appoint any particular attorney to defend him, and the refusal of the court to name a particular counsel was not a denial of defendant's right to be represented by counsel for, as said in *People* v. *Manchetti* (1946) 29 Cal.2d 452, 458 [175 P.2d 533]: ''. . . defendant had no absolute right to be represented by a particular attorney.'' (See also *People* v. *Stroble* (1951) 36 Cal.2d 615, 629 [226 P.2d 330], affd. (1952) 343 U.S. 181 [96 L.Ed. 872, 72

S.Ct. 599]; *People* v. *Howard* (1957) 150 Cal.App.2d 428, 430 [310 P.2d 120].' (*People* v. *Williams* (1959) 174 Cal.App.2d 364, 377 [3] [345 P.2d 47].)''

 Defendant urges as error the trial court's refusal to heed his claim that he had ''an unjust trial.'' Defendant's statement was made to the court subsequent to his trial and at the time for hearing the report of the probation officer and imposition of sentence. The record shows the following exchange:

''THE COURT: . . . Any comment that you wish to make, or your counsel on your behalf?

''MR. MARTINEZ: Yes. I figure I had an unjust trial. One of my jurors, the back one over there, was informed not to, had been instructed not to talk to any of the officers or anybody of the Court. Yet when I come up here on the elevator he was sitting in the control room, just carrying on like they are old pals, and he was the member of the jury that was on there to convict me, and yet my public defender here failed to bring it to the Court's attention. Some of my witnesses which he said was immaterial, but I didn't think it was immaterial. And just a lot of things like the way they obtained these confessions from these various witnesses, through threat, and promises. Well, that's all.

''THE COURT: You discussed these matters with Mr. Carroll?

''MR. CARROLL: Yes, your Honor. In regard to the first matter he brought up, I talked with Lieutenant Parker about the possibility of there having been any exchange in regards with this case with any deputy under his command and any of the jurors and he assures me that, to his knowledge, there was no conversation in regards to any case. He is not aware of any member of the jury being back in the area there, in the control room. However, the general public does go back there quite a bit; it is possible that a juror may have been there. I have been unable to obtain any evidence whatsoever to indicate to me that any juror talked to any deputy sheriff in regards to the case while the trial was in process.

''MR. MARTINEZ: While I was coming up in the elevator everybody was noticing and brought it to my attention that he was a juror.

''THE COURT: Why do you assume he was doing anything improper?

''MR. MARTINEZ: He shouldn't have been back there, talking like old pals.

''THE COURT: Was he talking to anyone in this case?

912

"MR. MARTINEZ: To the officer. He could have very well informed him—

"THE COURT: But you have no reason to assume he didn't.

"MR. MARTINEZ: The thing is he was instructed not to have any communication of that sort.

"THE COURT: Do you know if their discussion was pertaining to this case?

"MR. MARTINEZ: I couldn't tell what he was telling exactly.

"THE COURT: We'd have to assume he was obeying the admonition of this Court, assuming he was there.

"MR. MARTINEZ: Then all the methods that were used to try to get me to cop out to these various counts, like throwing me in the hole.

"THE COURT: You went to trial and you were found guilty, guilty by jury trial.

"MR. MARTINEZ: Methods used to try to get me to cop a plea of guilty.

"THE COURT: But you didn't do that.

"MR. MARTINEZ: No. There was no cause for me—throwing me in such a place like that, just try to get a plea out of me.

"THE COURT: Well, you had a fair trial and you had a good representation; Mr. Carroll gave you very adequate representation.

"MR. MARTINEZ: As far as the Court knows, but behind those doors you don't know what goes on.

"THE COURT: Any other comment?

"MR. CARROLL [Public Defender] : No."

■ A conversation between a juror and an officer of the court is not misconduct *per se.* There must be prejudice. (*People* v. *Robinson,* 146 Cal.App.2d 310, 314 [303 P.2d 633].) Although wisdom might dictate a full investigation into the charge (*People* v. *Phelan,* 123 Cal. 551, 567 [56 P. 424]), that decision is a matter within the discretion of the trial court. (*Id.* at p. 568.) ■ Where, as in this case, nothing appears showing that the conversation related to the case, there is no abuse of discretion in the failure to investigate. (*Id.* at p. 568.) Furthermore, if this alleged misconduct occurred before the jury had finished its role in the case, defendant waived any objection by not stating it then. (*People* v. *Quiel,* 68 Cal.App.2d 674, 680 [157 P.2d 446].) ■ "A defendant or his attorney, who possesses knowledge, during the progress of a trial, of the conduct of jurors which he deems to be prejudicial, may not fail to call the court's atten-

tion thereto, speculate upon receiving a favorable verdict, and then assign the conduct as prejudicial misconduct for the first time after an adverse verdict has been returned against him." (*Ibid.*)

Defendant contends he was "denied his right to counsel and his right to appear and defend himself by the judge's refusal to allow a continuance because of appellant's illness."

On the afternoon of the first day of trial defendant complained of being ill. The court made inquiry of defendant's symptoms and being satisfied the complaint was not serious denied the request and ordered that defendant be examined by a doctor prior to the resumption of the trial the next day. The medical report showed no serious illness warranting a trial delay.

A motion for continuance creates a factual issue. In this case it is whether or not defendant was too ill to be tried. In the absence of a clear abuse of discretion by the trial court, its determination to this issue will not be disturbed on appeal. (*People* v. *Hanz,* 190 Cal.App.2d 793, 796-797 [12 Cal.Rptr. 282].) There is nothing in the record to establish that defendant's condition at the time was such as to preclude him from effectively proceeding with his defense; in fact, the evidence is to the contrary.

Defendant finally contends that he was erroneously sentenced. We find the sentence as to count I of the information is correct. As to count II, robbery, and count III, attempted murder, it is clear the shooting of the police officer occurred by reason of the discharge of defendant's gun during that robbery and was incident to the single objective of robbery. As such, the imposition of the latter two sentences is double punishment forbidden by Penal Code section 654, which reads, in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . ."

In *In re Henry,* 65 Cal.2d 330, the court said (at pp. 330-331 [54 Cal.Rptr. 633, 420 P.2d 97]): "Petitioner contends that the concurrent sentences inflict multiple punishment in violation of Penal Code section 654, and invokes the rule of *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal. Rptr. 607, 357 P.2d 839], that 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' "

914

In *People* v. *Chapman*, 261 Cal.App.2d 149, 179 [67 Cal. Rptr. 601], this court stated: ''When a series of connected crimes is incident to one objective, the defendant may be punished for the most serious offense but not for more than one. (Pen. Code, § 654; *Neal* v. *State of California* (1960) 55 Cal. 2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839].)''

■ ''Whether a course of criminal conduct is divisible, giving rise to separately punishable crimes, depends upon the intent and the objective of the actor. (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 824-825 [48 Cal.Rptr. 366, 409 P.2d 206].) A number of decisions involve a completed armed robbery, followed by a separately motivated shooting, each of which is separately punishable (e.g., *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *Birdwell* (1967) 253 Cal.App.2d 621 [61 Cal.Rptr. 536]; *People* v. *Houghton* (1963) 212 Cal.App.2d 864 [28 Cal.Rptr. 351]). Others illustrate a robbery and shooting which are incident to the single objective of robbery. (E.g., *In re Henry* (1966) 65 Cal.2d 330 [54 Cal.Rptr. 633, 420 P.2d 97]; *People* v. *Ridley* (1965) 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124].)'' (*Id.* at p. 179.)

■ Defendant by one ''act,'' the course of conduct constituting the robbery, simultaneously violated both statutes, to wit, Penal Code section 211 (robbery) and Penal Code section 664, subdivision 1 (attempted murder). Accordingly, although he violated both statutes, he can be punished under only one.

The sentence for attempted murder, count III of the information, the less serious crime, is suspended. It is not now vacated, however, since to do so would extinguish it beyond revival in the event of a subsequent reversal of the judgment under count II. The suspension should remain effective until completion of the sentence under count II and shall become permanent at that time. In other words, the permanency of the stay is contingent upon the continued validity of the conviction upon count II. In the event that the conviction upon count II is set aside, on proper proceedings the suspension of the sentence on count III should be terminated and that sentence then become effective.

The sentence imposed upon defendant in count III for violation of section 664, subdivision 1, of the Penal Code is suspended pending further order of the superior court consistent with the views expressed herein. The judgment is affirmed in all other respects.

Pierce, P. J., and Friedman, J., concurred.