## STATE v. DONALD OLSON.

178 N. W. (2d) 230.

June 12, 1970—No. 42003.

*Douglas Hall,* for appellant.

*Keith M. Stidd,* City Attorney, and *Lewis E. Bloom,* Assistant City Attorney, for respondent.

SHERAN, JUSTICE.

Defendant, found guilty of violating Minneapolis Code of Ordinances, § 870.060, which proscribes conduct "which disturbs the peace and quiet of another," appeals to this court contending that the evidence does not sustain a determination of guilt and, if it did, the result would be violative of rights of defendant protected by State and Federal Constitutions.

### FACTS

On October 27, 1968, defendant was one of about 30 persons who, although not parishioners, came to the Resurrection Catholic Church in Minneapolis intending to "create a dialogue" dur-

ing a Mass which commenced there at about 10:30 a. m. on that day. Arriving early, defendant and his associates divided into small groups so that when the parishioners, numbering about 750, took their places in the church the demonstrators were dispersed among them.

Defendant and his girl friend, Rosina Richter, found a place about 75 feet from the altar and in the central section of the seating area.

The religious service proceeded in the usual way. The time came when the celebrant of the Mass stood before the congregation to deliver a sermon or homily. Some effort was made by the visiting group to contest the truth of the views expressed by the priest. The priest did not respond, if he heard, and no verbal exchange resulted. Just before the Canon of the Mass, the other visitors left the church. Defendant and Miss Richter remained.

The Canon of the Mass as conducted in churches which adhere to the Roman Catholic tradition (and others, too) is intended to be a reenactment of the events of the Last Supper, the evening preceding Christ's death. It is an especially reverential interval for those believing and participating in it—a fact which now seems to be accepted by defendant. While the Canon of the Mass was in progress and the members of the congregation were kneeling in prayer and veneration, defendant remained in a standing position from which he berated the priest celebrating the Mass by charging him with "hypocrisy" and otherwise disparaging his views in a loud and angry tone. When ushers approached defendant asking him to sit down or leave, he refused. Instead, he resisted efforts to lead him and, "going limp," forced the ushers to haul him outside bodily. Some of the members of the congregation were visibly disturbed and excited by this apparent affront to the religious service in which they were engaged.

## DECISION

■ In our judgment, the facts as related justified a finding that defendant's conduct constituted a breach of peace in violation of Minneapolis Code of Ordinances, § 870.060, as clarified

by our decision in State v. Johnson, 282 Minn. 153, 159, 163 N. W. (2d) 750, 754, where we said:

"* * * '[B]reach of the peace' is a generic term which includes all violations of the public peace or order calculated to disturb the tranquility which members of the public are entitled to enjoy. The culpability of the offense depends upon time, place, and circumstance. The offense may arise out of acts of violence or conduct causing or likely to cause an immediate disturbance of the public order. * * * Because the offense of 'breach of the peace' comprehends an undesirable form of conduct rather than a specific act, no single definition can cover the full range of acts which may constitute the offense."

■ Minn. Const. art. 1, § 3, provides:

"* * * [A]ll persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right."

Minn. Const. art. 1, § 16, provides:

"* * * The right of every man to worship God according to the dictates of his own conscience shall never be infringed, * * * nor shall any control of or interference with the rights of conscience be permitted, or any preference be given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of the State * * *."

U. S. Const. Amend. I provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press * * *."

The First Amendment to the Federal Constitution conditions state criminal prosecutions by reason of the due process of law requirements of the Fourteenth Amendment.

Defendant, in contending that his conviction results in an infringement of his constitutional rights, argues, in effect: (1) Defendant entered the Resurrection Church to engage in a serious dialogue—not to scoff or jeer. (2) Had defendant's efforts to express disagreement with the pastor occurred at an appropriate time during the Mass, no exception would have been taken to his behavior. (3) Conceding that the Canon of the Mass was not an appropriate time for debate, defendant should not be punished for an unintended error in timing.

In defendant's brief it is stated:

"The application of the ordinance to speech and conduct because it occurred during the canon and not during the sermon would put the force of the law behind a particular religious custom and practice, and to this extent infringes the prohibition against establishment of religion."

And again:

"The defendant rose to speak on important issues involved in the position of the Catholic Church and specifically presented in the pastor of this church. This is freedom of speech in its truest form and expression."

Granting defendant's claim that his actions were motivated by a concern for the truth as he conceives the truth to be, we believe that one who invites himself to a private place of worship such as a church or synagogue in order to contest the teachings of its pastor, minister, or rabbi, in the presence of a congregation engaged in formal religious worship, should inform himself before doing so whether and when such a disputation would be considered less than offensive. Even a superficial inquiry would make it clear that the Canon of the Mass is a profoundly solemn experience for those participating in it. Even without any inquiry, it would seem that this is a fact which should be quite evident to any reasonably perceptive observer regardless of his personal religious conviction. The defendant in this case is a well-educated man. He was in the company of a girl who was herself

of the Catholic faith though not a member of the Resurrection parish. Concerned as he was about religious truths, the defendant could be expected to be sensitive to the religious feelings of others. A stranger who imposes himself upon a congregation in a situation such as this in a way which gives the appearance of an intentional obstruction of religious meditation by insulting remarks and bizarre behavior has exceeded the permissible limits of free speech and has infringed upon the rights of others to worship according to the dictates of their conscience. Conceding that criminal sanctions may be of limited help in curbing such indiscretions, we do not believe the State or Federal Constitutions prohibit their use in situations of this kind when public authorities consider it advisable to resort to them.

Although we find no decision of the United States Supreme Court directly in point, we believe the views which have been expressed in this opinion are consistent with such decisions as Bachellar v. Maryland, 397 U. S. 564, 90 S. Ct. 1312, 25 L. ed. (2d) 570; Tinker v. Des Moines Independent Community School Dist. 393 U. S. 503, 89 S. Ct. 733, 21 L. ed. (2d) 731; and Gregory v. Chicago, 394 U. S. 111, 89 S. Ct. 946, 22 L. ed. (2d) 134.

Affirmed.