[Crim. No. 7875. First Dist., Div. Two. May 17, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES C. ORCHARD, Defendant and Appellant.

## COUNSEL

J. Richard McMichael, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Louise H. Renne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KANE, J.**—Defendant appeals from a judgment entered upon a jury verdict convicting him of attempted burglary. Defendant also purports to appeal from an order denying his motion for new trial, but that order is nonappealable under Penal Code section 1237.

Since the sufficiency of the evidence, though predominantly circumstantial, is not questioned, it may briefly be summarized by stating that shortly

before 2 a.m. on March 18, 1968, Marin County law enforcement officials discovered appellant and his vehicle in the immediate vicinity of a roadside restaurant. A screen on a side window of the restaurant was found slit, a path found beneath the window appeared fresh, and dark debris on the blade of a knife found in appellant's pocket appeared similar to debris on the screen.

Defendant urges a reversal of the judgment based upon the following contentions:

### Juror Misconduct

Two of the grounds supporting appellant's motion for new trial were that "the jury has been guilty of misconduct by which a fair and due consideration of the case has been prevented" and that "the verdict was decided by means other than a fair expression of opinion on the part of all the jurors and decided by lot." (See Pen. Code, § 1181, subds. 3, 4.) The motion was accompanied by the affidavit of juror Olivia M. Bosman, in which she stated that after several hours of deliberation she had passed a note to the jury foreman expressing her belief that defendant was innocent and that she would not change her decision, that the jury foreman had torn the note up, stood and angrily chastised her for 10 to 15 minutes before the other jurors for not keeping an open mind, producing in her feelings of embarrassment, humiliation and a desire to leave as soon as possible and causing her to vote appellant guilty.[1]

---

[1]The affidavit provides: "OLIVIA M. BOSMAN, being first duly sworn, deposes and says: that she was a member of the jury of the above-entitled action. That she was instructed that a juror should not change his conclusion in respect to the innocence or guilt of the defendant merely because one or more or all of the fellow jurors may have come to a different conclusion, or merely to bring about a unanimous verdict. That she did not follow the instruction of the Court in that she wrote 'guilty' on her ballot when in fact she believed the defendant to be innocent of the crime of attempted burglary or of any crime. That she was not allowed to fairly express her opinion as a member of the jury in reaching a verdict. That after several hours of deliberation she wrote on a piece of paper that she had decided that defendant Orchard was innocent of the crime charged or any crime and that she would not change her belief in his innocence. She passed the note to the foreman, Mr. Otto Haefler, he read the note and immediately tore the note up and threw the pieces away. He then stood and angrily addressed the members of the jury and specifically chastised her for not keeping 'an open mind' for guilt. This chastisement continued for approximately ten to fifteen minutes. That because of this harassment by the foreman she was so embarrassed and humiliated in front of the other members of the jury that she voted 'guilty' on the next ballot rather than be subjected to the domination and coercion of the foreman. That she determined to get out of the jury room as soon as possible. That her will was overborn [sic] by Mr. Haefler and that by voting for guilt when she felt that the defendant was innocent, the verdict was arrived at by resort to determination of chance. That Mr. Haefler, after tearing up her note and chastising her publically [sic] for not keeping 'an open mind' for guilt, demanded oral polling of the jurors. That fearing she would be subjected to further coercion by

In its written opposition to said motion, the prosecution objected to any consideration of the affidavit on the basis of authority holding that jury verdicts could not be impeached except on inapplicable limited grounds. No discussion of the affidavit occurred during the hearing on the motion for new trial; and at that time, December 20, 1968, the expanded right to impeach verdicts accorded in *People v. Hutchinson* (June 18, 1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], was not applicable. In these circumstances it may be assumed that the trial court did not consider juror Bosman's affidavit.

The Supreme Court's unanimous opinion in the *Hutchinson* case, however, now appears to require such consideration. Construing provisions of Evidence Code section 1150, subdivision (a), the court drew a distinction between "overt acts, objectively ascertainable" and "subjective reasoning processes of the individual juror" (p. 349), and held, "The only improper influences that may be proved under section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." (P. 350.) The limitation to proof of such objective facts "prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent." (*Id.*)

The affidavit of the juror in *Hutchinson* described angry and threatening statements made by a bailiff who repeatedly urged the jurors to reach a quick decision. (P. 346, fn. 1.) Finding the affidavit admissible to prove the statements and conduct of the bailiff and ordering a redetermination

---

being forced to vote orally, she maintained her vote of guilty until the verdict was reached.

"When polled as a juror by the Court she said 'guilty' only because she thought that law required her to say guilty upon being polled by the Court if she had voted guilty when in the jury room. She did not know that she would be allowed by the Court to say 'not guilty' if she did not feel the defendant was guilty, but rather that it was her duty to state in a jury box what she had voted upon in the jury room.

"She was not contacted by Mrs. Soladay, defense counsel, or by Mr. Orchard, the defendant in the above-entitled action. The verdict was reached at approximately 2:30 a.m. on August 24, 1968, and at approximately 9:00 a.m. on that same morning she attempted to contact defense counsel and failed. She again called defense counsel's residence on the next day, which was Sunday, and failed to reach her. She called defense counsel's office the following Monday morning and failed to reach counsel and finally reached defense counsel Monday afternoon with the request that she be allowed to tell the Court of her failure to follow its instruction to vote innocent unless she felt that the defendant was guilty.

"DATED: November 22, 1968

[Signed] Olivia M. Bosman
OLIVIA M. BOSMAN"

of the defendant's motion for new trial,[2] the court quoted Evidence Code section 1150 in concluding, "The bailiff's remarks and the tone of their delivery constitute statements and conduct that are 'likely to have influenced the verdict improperly.'" (P. 351.)

■ An allegation of jury misconduct raised on a motion for new trial presents a question of fact for the trial court.

Under *Hutchinson*, evidence of the jury foreman's conduct and/or statements is admissible. However, "No evidence is admissible to show the effect" of such conduct and/or statements upon juror Bosman. (Evid. Code, § 1150, subd. (a).)

■ Therefore, if the "admissible" evidence contained in juror Bosman's affidavit is sufficient to present a question of fact, the matter must be returned to the trial court for that determination.

Stripped of its inadmissible portions, the sum total of juror Bosman's affidavit simply describes an account of interchange between jurors in which the foreman sought to persuade Mrs. Bosman to maintain an open mind. To permit inquiry as to the validity of a verdict based upon the demeanor, eccentricities or personalities of individual jurors would deprive the jury room of its inherent quality of free expression.

We note also the obvious but nonetheless important distinction between *Hutchinson*, involving the improper conduct of a bailiff, and the facts in this case. Jurors may be expected to disagree during deliberations, even at times in heated fashion. On the other hand, the bailiff is expected, indeed required, to refrain from any act or statement concerning the deliberations of the jury except in carrying out the orders of the court.

In our opinion the conduct and/or statements of the jury foreman cannot, as a matter of law, be considered of such a character as was likely to have influenced the jury improperly. (Cf. *Putensen* v. *Clay Adams, Incorporated* (1970) 12 Cal.App.3d 1062, 1083 [91 Cal.Rptr. 319].)

### Limited Time To Argue

■ The trial court imposed time limitations of 30 minutes for the prosecution opening argument, 45 minutes for the defense argument, and 15 minutes for the prosecution closing argument. Defense counsel objected to such limitation in chambers and included it as a ground for

---

[2]The court noted that with such type of evidence available for consideration, a trial court could "determine the substantive questions of whether the particular misconduct is a recognized ground for new trial and whether it has prejudiced the losing party." (P. 350.)

new trial. The court notified counsel for both sides of their remaining time during arguments. The prosecution consumed 29 minutes for its opening argument and 15 minutes for its closing argument; defense counsel consumed 39 minutes for argument. When notified by the trial court that 10 minutes of argument remained, defense counsel replied, "Well, I don't need 10 minutes, because it all boils down to the facts which came in."

These circumstances fail to demonstrate the prejudice required by an appellate court to overturn a trial court's exercise of discretion in imposing reasonable limitations upon argument. (*People* v. *Stout* (1967) 66 Cal.2d 184, 200 [57 Cal.Rptr. 152, 424 P.2d 704]; 48 Cal.Jur.2d, Trial, § 417, p. 420; see also 6 A.L.R.3d 604.)

### *Jury Deliberations Before Holiday*

■ Appellant contends the jury "was rushed and pressured in its deliberations" by being sent to deliberate initially at 5:48 p.m. on the Friday evening preceding a Labor Day weekend instead of being permitted to retire and deliberate on Saturday or recess deliberations until the ensuing Tuesday. The record, however, reflects the lack of any merit in this contention. It shows that the jury returned to be sent to dinner at 7:14 p.m., resumed deliberations at 8:45 p.m., returned to hear instructions reread at 1:03 a.m., retired again at 1:12 a.m., and returned with a verdict at 2:13 a.m. The jury's deliberations thus consumed 6 hours and 45 minutes.

### *Misconduct By Prosecution*

■ In an affidavit in support of his motion for new trial, dated November 22, 1968 and acknowledged and filed on December 2, appellant stated that "on August 23, 1968," during a recess in the afternoon "following defense counsel's argument to the jury," he observed the prosecuting attorney engaged in conversation with the jury foreman in the corridor outside the courtroom. Appellant stated he found "such an extended conversation" occurring while the trial "was in progress" to be "strange," but that he did not realize it constituted misconduct nor notify his counsel of it until the week following return of the verdict. In his written opposition to the motion for new trial, the prosecuting attorney did not deny that such conversation occurred, but contended that the affidavit failed to provide sufficient indication of prejudicial misconduct.

■ Although it is highly improper for a juror to communicate with others about a case, such communication does not constitute misconduct

per se (*People* v. *Martinez* (1968) 264 Cal.App.2d 906, 912 [70 Cal.Rptr. 918], and "unless the observer can hear the actual conversation, it is impossible to make a showing of prejudice." (Witkin, Cal. Criminal Procedure (1963), § 521, p. 532.) Moreover, the failure to raise objection to such alleged misconduct until after completion of the jury's duties constitutes a waiver of any error. (*People* v. *Martinez, supra,* at pp. 912-913.)

█ It is also elementary that counsel should never engage in private conversation with a juror during a trial, but in this case appellant neither raised a timely objection nor demonstrated resulting prejudice.

### Effective Assistance Of Counsel

Appellant contends the assistance provided by his selected (not appointed) trial counsel was ineffective. We have examined the record with respect to each item of claimed ineffectiveness and find no basis for any such claim.

### Limited Voir Dire Interrogation

█ Defense counsel was prevented by the court from stating principles of law during *voir dire* examination. In response to defense counsel's repeated efforts to determine whether prospective jurors held biases against particular principles of law, the court asked all jurors whether any would be inclined not to follow the law as explained by the court; none indicated they would be so inclined.

Once the trial judge obtains a commitment from each juror that he will follow the law as given by the court, there is neither basis nor need for any further inquiry on that subject.

█ The practice of allowing counsel to interrogate prospective jurors on individual rules of law, permitted by some trial courts, is improper. It is wasteful of court time, more often confusing than enlightening, and is an invasion of the court's function to instruct the jury.

Here, the learned trial judge followed the correct procedure.

### Errors Re Instructions

█ Appellant contends the court erred by refusing to instruct that every element of a crime must be proved beyond a reasonable doubt. The court did instruct upon the presumption of innocence and reasonable doubt as defined in Penal Code section 1096, compared the standards of proof in civil and criminal cases, and defined all essential terms of the crime

charged. In these circumstances an instruction respecting proof of each element beyond a reasonable doubt need not have been given. (*People* v. *Reed* (1952) 38 Cal.2d 423, 430 [240 P.2d 590]; *People* v. *Pendarvis* (1960) 178 Cal.App.2d 239, 241 [2 Cal.Rptr. 824]; Pen. Code, § 1096a; CALJIC (3d ed. 1970) No. 2.90.)

■ Appellant next contends the court erred by refusing ·to instruct upon voluntary abandonment of commission of a crime and upon commission of a potential crime through misfortune or accident. The absence of any evidence supporting these instructions justified the court in refusing to give them. (Witkin, Cal. Criminal Procedure, *supra,* § 469, p. 476.)

■ Appellant finally contends the court failed to advise his counsel prior to argument of all instructions to be given, as required by Penal Code section 1093.5. The record indicates that in chambers prior to argument the court informed defense counsel which instructions were to be given by referring to the appropriate CALJIC instruction numbers. The court offered counsel a copy of his volume of CALJIC instructions, but since court was then convened, she was not able to read them.

The court later stated that "these are the instructions that are normally given in a criminal case," and that since counsel "argued the case very skillfully and very effectively," her inability to read the instructions had not affected her "ability to argue." Even if the court failed in fact to "advise" counsel of all instructions to be given, appellant's failure to demonstrate any resulting hindrance to the ability of his counsel to argue renders any such error nonprejudicial.

### *Admissibility Of Evidence*

■ Appellant complains of rulings by the court by which evidence of an experiment was excluded and evidence pertaining to local temperatures was limited.

Defense counsel sought to introduce evidence of an experiment conducted to determine whether dust particles would collect on the type of screen used on the restaurant window. The record clearly shows such a dissimilarity of conditions between the experiment and the actual evidence as to justify the trial court's ruling.

The trial court did admit defense evidence of daily local temperatures, but limited such evidence to the two-week period immediately preceding the date of the crime. We find no error in this ruling.

The judgment is affirmed. The purported appeal from the order denying appellant's motion for new trial is dismissed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1971.