Opinion
ZACK, J.
In consolidated cases appellants were convicted before Judge Julius M. Title in division 23 of the following offenses: Cruz, of violation of Penal Code sections 302[1] and 404.6; Escalante, sections 242, 302, 404.6 and 594; Martinez, sections 242, 302 and 404.6; Salazar, sections 242 and 302; other convicted defendants did not appeal.
The evidence tending to convict being substantial, appellants do not argue the insufficiency thereof; accordingly, no detailed factual review of the more than 2,837 pages of testimony will be made except as is necessary to determine the content of the record pertaining to the points raised on appeal. In brief, the evidence showed that the alleged offenses were incidental to, and a portion of, the actions of about 300 persons marching, chanting slogans, and breaking into St. Basil’s Catholic Church on Wilshire Boulevard during the celebration of Midnight Mass on Christmas Eve, 1969. We have considered all of the contentions raised by appellants and find them without merit. We restrict our written opinion to the following issues: (1) the denial of a motion for a continuance to obtain counsel of appellants’ choice, and the failure to relieve counsel who allegedly would have been a material witness for appellants; (2) asserted misconduct of the jury; (3) the alleged unconstitutionality of Penal Code section 302 in the matter of vagueness or overbreadth.
*Supp. 6 (1) Denial of a continuance to obtain counsel of appellants’ choice; failure to relieve counsel who allegedly would have been a material witness for appellants.
The complaints were filed January 19, 1970, and trial, after many continuances (detailed below), commenced in division 23 on April 6, 1970. On March 24, in division 20 before Judge David Aisenson, on behalf of all defendants represented by him, including appellants other than Escalante (who had separate counsel) attorney Acosta, who had represented all appellants other than Escalante from the inception, moved to be relieved as counsel in division 20. One of his grounds was that he would have to be a material witness for the defense. It is argued that he should have been relieved so as not to be in violation of American Bar Association, Code of Professional Responsibility, Dr 5-102(A) requiring that an attorney not undertake a representation when he is a material witness in the case. While we may be in full accord with the language and purposes of this provision of the code, we are cited no California authority holding that an attorney may not testify on behalf of his client in a case where he is representing him as counsel.
But even if the California law were otherwise, the record is bare of any showing of facts indicating an abuse of discretion by the court in denying the motion to be relieved on this particular ground. It is admitted that Acosta did not offer himself as a defense witness in the People v. Chavez* case (M.C. 352415, Cr. A. 9814), another case arising out of the same events at St. Basil’s Church in which he was also defense counsel, and the trial of which was in fact completed prior to the commencement of trial in the cases subject to these appeals.[2] Moreover, his naked statement (“When Sergeant Dominguez was a witness for the prosecution in the companion case he denied having certain conversations with me personally at the scene of the crime.”) did not advise the court of the materiality of the conversations by giving the substance thereof. If Acosta’s testimony would not have concerned a material issue, or would have been merely cumulative, there was no prejudice to appellants. On this silent record we may not presume the existence of prejudice.
As another ground of the motion Acosta advised the court that “I am physically and mentally exhausted from a five-week trial in Judge Nebron’s court. I find myself totally incapable of continuing this week in this matter.” There was no prejudice in denying a continuance on March 24 on this *Supp. 7 ground since the cases did not go to trial that week, but the week of April 6, 12 days later.
Appellants also contend that they were denied counsel of their choice when the court, in ruling on the motion, failed to relieve Acosta as defense counsel at their request and failed to substitute in the public defender. The public defender had told the court that the appellants qualified for his services, but at least a two-months’ continuance would be required to investigate the case. The public defender resisted appointment on any other terms.[3]
This assertion of error, even if given fullest effect, does not apply to appellant Escalante who at all times was represented by private counsel of her choice, and she thus may not assert this as a ground of reversal of the convictions. As applied to the other appellants, we find no reversible error on this ground. The court was entitled to consider whether the request to-substitute other counsel, and the continuance incident thereto, in consolidated cases involving 18 prosecution witnesses was made for purposes of delay. Where a defendant has been inexcusably dilatory, or is deliberately using the request to substitute new counsel as a means of delay, the request to substitute and continue may be properly denied. (People v. Shaw (1941) 46 Cal.App.2d 768, 774 [117 P.2d 34]; People v. Whinnery (1942) 55 Cal.App.2d 794, 798 [131 P.2d 33]; People v. Anthony (1949) 90 Cal.App.2d 122, 134 [202 P.2d 776]. See also People v. Garabito (1966) 244 Cal.App.2d 549, 554-555 [53 Cal.Rptr. 152].)
The record, with Acosta at all times counsel of record, is as follows: These cases were called for trial setting on February 18, 1970, and then transferred to division 36 for trial. In division 36, on the same day, a motion to consolidate with the Chavez case was made. The motion and the trial were continued to February 20 in division 20. Such motion was denied, after retransfer, on February 20, 1970, in division 36. On February 26 the cases were then sent to division 18 for jury trial. In division 18 they were then trailed for trial until February 27. On February 27 they were further trailed to “a date uncertain,” and the defendants waived time. On March 2 the cases were transferred to division 18 and there trailed to the completion of the Chavez-Doherty case. On March 19 division 18 ordered the parties and attorneys to appear on March 24 at 9 a.m. for trial. Meanwhile, a petition for writ of prohibition against trial in division 18 had been served on the presiding judge on March 17, and on March 24 the causes were *Supp. 8 transferred to division 20. On March 24, the motion to relieve Acosta as counsel was made in division 20, and denied. The cases were then sent to division 23 for trial on March 25. On March 25 the cases were continued to March 30 for trial. On March 30 they were continued to April 6th.
It is thus seen that although the court denied the motion to substitute new counsel on March 24, it did, on Acosta’s request, continue the trial to March 30. When the case was again called for trial on March 30, Acosta was not present but appeared by a Mr. Manes. Manes moved for a further continuance on the ground that a question had arisen as to Acosta’s eligibility to represent the defendants because of his failure to pay State Bar dues. Manes also moved for a continuance on the ground that Acosta had been ordered to- appear on April 7 in department 104 of the superior court for trial of a felony case. Judge Title again continued the case to' April 6 so that these problems could be worked out.
In all of these hearings (other than the motion to relieve counsel on March 24) there was no indication that Acosta was not satisfactory to- any of the appellants as counsel. Nothing appeared in the record indicating that some intervening event had changed their desires. Although the right of a criminal defendant to' counsel of his own choice is a matter of constitutional due process (Chandler v. Fretag (1954) 348 U.S. 3 [99 L.Ed. 4, 75 S.Ct. 1]), it is not an absolute one which may be exercised by a defendant under any and all circumstances. (Avery v. Alabama (1940) 308 U.S. 444 [84 L.Ed. 377, 60 S.Ct. 321].) Here, where a wide variety of interests, including those of 18 prosecution witnesses (some with military and vacation conflicts in May, June and July) had to be accommodated, an absolute right to. change counsel should, at least, require a showing to the court that the request to change counsel was being made at the earliest possible date. The record supports an implied finding in ruling on the motion that appellants were content to retain Acosta when the cases were called for trial several times prior to the trial of Doherty-Chavez, said nothing about the matter during Acosta’s being occupied in the trial of Doherty-Chavez, and then raised the point as a means of delay after Acosta was available when Doherty-Chavez was completed.
This, it should be evident, was not a case of a flat denial of appellants to have new counsel of their choice (Chandler v. Fretag, supra), who was then ready to go to trial. It was a case of a motion to relieve counsel and for a continuance of the trial to obtain new counsel after numerous hearings and trial continuances. Denial under such circumstances was well within the discretion of the trial court (Witkin, Cal. Criminal Procedure (1963) p. 358). Not the least of the facts supporting the trial court’s denial of the motion to substitute in the public defender when the case was called for *Supp. 9 trial on March 24 (and the two months’ continuance necessarily involved) was that both the public defender, and private counsel appointed by the court (other than Acosta), had been turned down by appellants as early as February 18.
Even if it could be held that the court abused its discretion on March 24 in denying the motion, the point has been waived. The motion was never renewed. On the contrary, on March 30 a further continuance was granted for the express purpose of working out other difficulties interfering with Acosta’s availability to act as defense counsel. On April 6 the case proceeded with Acosta as counsel without any objection from any of the defendants. Failure to renew the motion and proceeding without objection constituted an acceptance of Mr. Acosta, especially in the absence of continuing efforts to obtain other counsel down to the commencement of trial.
(2) Misconduct of the fury
It is urged that some members of the jury discussed the cases in the absence of other jurors contrary to Penal Code section 1128. The affidavit of juror Helen Fitzgerald avers that while the jury was in recess having lunch, in the custody of the bailiff, she heard the forelady say, “Do you think I’ve handled things well? Most of us have been reasonable in our deliberations, except for a few holdouts.” The rest of the conversation she did not hear. It is doubtful if such conversation, as reported, amounted to “deliberation” within Penal Code section 1128 since there was no discussion of the evidence or issues in the cases. Nor is there any specific showing of how such a portion of a conversation (Mrs. Fitzgerald not being identified as one of the “holdouts”) influenced her to vote against appellants. (People v. Orchard (1971) 17 Cal.App.3d 568, 576 [95 Cal.Rptr. 66]; People v. Henderson (1947) 79 Cal.App.2d 94, 124 [179 P.2d 406].)
Juror Fitzgerald’s post-verdict affidavit also alleges that she advised her insurance man, Joe Reilly, in a business conversation while the trial was in progress, that she was a juror in the case. Reilly told her he was present during the disturbance. Although she made it clear she could not discuss the evidence, he said “I hope you throw the book at them.” The finding of a trial court as to the absence of prejudicial misconduct, failing a showing of abuse of discretion, will not be disturbed on appeal. (People v. Guthaus (1962 ) 208 Cal.App.2d 785, 792 [25 Cal.Rptr. 735].) That the affidavit is uncertain (i.e., it alleges the totality of the four incidents influenced her verdict; five incidents are listed—April 13-14, April 25, May 5, May 6, May 8—and it is thus not clear this event, or any of those listed, is one of the four), that the Reilly incident was not brought by her to the trial judge’s attention before verdict when an alternate juror could have replaced her, and that an instruction had been given that the *Supp. 10 jurors should reach a verdict solely on the basis of evidence received in court (CALJIC No. 1.00) were all circumstances indicating the trial judge did not abuse his discretion in ruling contrary thereto. There is no showing he did not consider it. (People v. Hutchinson (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132].) Having considered it, no California cases have held, in the absence of abuse of discretion, that he was required to grant a new trial on the basis of those portions which were properly before the court.
It is also asserted that juror Fitzgerald had a conversation with the bailiff, in the absence of counsel, to be excused from attendance at the trial for a few hours for business reasons, and that such request was, by the court through the bailiff, denied with the alternative given of being excused from the jury. There were alternate jurors at this time (April 13); juror Fitzgerald chose, notwithstanding the denial, to remain in the case. Her continuing to serve was thus not against her will as appellants assert, and no prejudice is shown by the irregular conduct. (People v. Martinez (1968) 264 Cal.App.2d 906, 912 [70 Cal.Rptr. 918].).
That the forelady drew up a chart and a written summary to analyze the issues and the law, during the deliberations, in an effort to persuade them to her view of the case, was a proper exchange between jurors. For a general discussion see People v. Orchard, 17 Cal.App.3d 568 at pages 572-574 [95 Cal.Rptr. 66]. We do not agree that the California law allows a verdict to be set aside upon a showing of error, in fact or law, in the statements exchanged by jurors during deliberations.
(3) The Constitutionality of Penal Code Section 302.
Appellants assert that Penal Code section 302 is unconstitutional as overbroad and vague.[4]
In analyzing the constitutionality of section 302, as applied, it is first observed that the charge in the criminal complaint is narrower than the statute under which it is brought, i.e., the wilful disturbance of the assemblage met for religious worship is alleged to have been by “rude behavior and unnecessary noise.” The charge does not allege such disturbance by “profane discourse,” or “indecent behavior,” as the statute additionally provides.
It is also noted that the trial court’s instructions as to the alleged, elements to be proved were, again, narrower than the charge. “Rude behavior” was, in the instructions, said to be synonymous with “tumultuous’’ or “offensive” *Supp. 11 conduct. (See Pen. Code, § 415—disturbing the peace.) Moreover, the jury was instructed “tumultuous conduct is violent conduct that wilfully endangers public safety or order,” that the “offensive conduct occurs when a defendant wilfully engages in offensive behavior which has a tendency to provoke others to acts of violence or to, in turn, disturb the peace and quiet, although the defendant’s own conduct, while offensive, was not in itself violent.” The disturbance, moreover, must “substantially” impair or disturb the order and solemnity of a religious assemblage by “committing acts in violation of implicit customs or usages, or of explicit rules for governance of the assemblage, of which rules the defendant knew, or, as a reasonable man, should have known.” The acts must disturb the assemblage, not just the individuals in it. Section 302 was further limited as a specific intent crime.[5] Standard instructions on substantiality and wilfulness were also given.
We hold that the statute, as applied in this case, is constitutional.
1. Although the statute may restrain freedom of speech indirectly or incidentally by prohibiting “rude behavior or unnecessary noise,” there is no question of the validity of enactments which restrain speech which are otherwise the legitimate objects of the police power. (Cox v. Louisiana (1965) 379 U.S. 536 [13 L.Ed.2d 471, 85 S.Ct. 453].) If it be urged that the statute’s prohibition of “profane discourse” is vague or overbroad in its effect on First Amendment rights, it is sufficient to note that appellants were not charged with violating those portions of the statute. A court can hardly reverse a conviction for asserted invalidity of a portion of a statute under which the appellants were not charged.
2. The portions of the statute under which appellants were charged are not invalid for vagueness or overbreadth on their face. In Riley v. District of Columbia (D.C.App. 1971) 283 A.2d 819 [10 Crim.L.Rptr. 2236 (12-29-71)], the District of Columbia Court of Appeals upheld the District’s statute (D.C. Code Sec. 22-1114; a misdemeanor “. . . to molest or disturb any congregation engaged in any religious exercise.”) against a charge of vagueness. The conduct there was distributing leaflets during a Mass in the face of an express prohibition from the pulpit in the same ceremony. The court, after referring to cases upholding similar statutes (State v. Olson (1970) 287 Minn. 300 [178 N.W.2d 230]; Gaddis v. State (1920) 105 Neb. 303 [180 N.W. 590]), said “. . ., in our judgment, which accords with similar holdings, ‘disturb’ is a word in common use and has an ordinary meaning which is easily understood by persons of reasonable intelligence *Supp. 12 . . . .” Riley goes beyond what is necessary to sustain Penal Code section 302 because the statute in Riley was sustained even though, contrary to Penal Code section 302, the means of the disturbance of the congregation was not made specific in the District of Columbia statute.
Castro v. Superior Court (1970) 9 Cal.App.3d 675 [88 Cal.Rptr. 500] (majority opinion holding Ed. Code, § 16701 [“any person who wilfully disturbs any public school or any public school meeting is guilty of a misdemeanor . . .”] unconstitutional as overbroad) is not controlling. That section 16701 of the Education Code, dealt with in Castro, is a broader statute than section 302 of the Penal Code is evident. Further, the Supreme Court, in considering the constitutionality of Penal Code section 403 (a section as broad as Ed. Code, § 16701) did not declare section 403 unconstitutional as was done in Castro. In re Kay (1970) 1 Cal.3d 930 [83 Cal.Rptr. 686, 464 P.2d 142],[6]
Moreover, the Supreme Court in In re Bushman (1970) 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727] expressly held that Penal Code section 415 (“Every person who . . . wilfully disturbs the peace or quiet of any . . . person ... by tumultuous or offensive conduct ... is guilty of a misdemeanor.”) is not unconstitutional in its entirety as vague or overbroad.
In all three sections (302, 403, 415) the basic operative word is the word “disturb.” We can see, from the viewpoint of vagueness or over-breadth, no difference between the “rude behavior and unnecessary noise,” of Penal Code section 302 and the “tumultuous or offensive conduct” of Penal Code section 415 which, in the respective statutes, follow the word “disturb.” Since Penal Code sections 302, 403 and 415 are cognate in their purposes of preventing breaches of the peace, and their language is similar (at least as to what is actually charged here), their treatment should have been a result in accord with Bushman and Kay.
3. Appellants assert that they were convicted under a construction of Penal Code section 302 which was made for the first time in the charge to the jury (above summarized) defining “rude behavior” and “unnecessary noise” in this case. They complain that the application of such construction to them for the first time, and after their conduct, is in the nature of an ex post facto law, and a denial of due process. (Bouie v. Columbia (1964) 378 U.S. 347 [12 L.Ed.2d 894, 900-901, 84 S.Ct. 1697].)
The argument is not pertinent. The basic question is whether the language of a criminal statute gives fair notice. As stated in United States v. Harriss (1954) 347 U.S. 612, 617 [98 L.Ed. 989, 996, 74 S.Ct. 808], “The constitutional requirement of definiteness is violated by a *Supp. 13 criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.” (Accord: Bouie v. Columbia, supra.) Certainly appellants should have known that the words “rude behavior” and “unnecessary noise,” by any standard, would prohibit beating on the church doors with poles, shoes, and receptacles while the Mass was being conducted inside a church filled to capacity, screaming, hollering and causing the breaking of glass in forcing the doors, knocking down an usher, wrestling in the vestibule, including hitting a security guard with a bottle, bursting through the locked doors of the chapel between the priest and the congregation while the gospel was being read, drowning out the creed which is read over the public address system as a part of the Mass, assaults on parishioners requiring hospitalization of one of them, and so forth. In the words of Harriss, appellants had fair notice such contemplated conduct was forbidden by Penal Code section 302. The conduct of appellants, therefore, under any theory, was within a reasonable and “fair notice” meaning of the section.
There may, of course, be hypothetical situations which the charging language from Penal Code section 302 could not constitutionally reach. There may also have been, in the imbroglio involving the packed church and the 300 protesters, in the actions of which group appellants were involved, conduct which would not constitutionally be reached by Penal Code section 302. But it was to prevent appellants’ being held guilty on any such theories that the trial judge instructed the jury that the acts involved must amount to tumultuous or offensive conduct (from cognate § 415), required the disturbance to be of the assemblage (not the individuals thereof) in the implicit customs or usages thereof, must be a substantial disturbance, and so forth, as summarized above. Such instructions removed the possibility that the convictions occurred on the basis of actions or legal theories not reasonably within the fair meaning of the portions of Penal Code section 302 with which appellants were charged. (See In re Bushman (1970) 1 Cal.3d 767, 775 [83 Cal.Rptr. 375, 463 P.2d 727]; In re Kay (1970) 1 Cal.3d 930, 943 [83 Cal.Rptr. 686, 464 P.2d 142].) Such restrictions on the meaning of “rude behavior” and “unnecessary noise” gave the People a greater burden than they might otherwise have had, but of this appellants can hardly complain.
The conduct being within a reasonable and restricted meaning of Penal Code section 302, on its face, the jury having been instructed that conviction may not result from conduct within other possible meanings, and the appellants having had fair notice prior to their conduct of such reasonable *Supp. 14 meaning, there is no room for the argument that appellants were, ex post facto, convicted on a construction of Penal Code section 302 which emerged for the first time in this case.
4. We have above indicated that, contrary to Castro, supra, the approach of the Supreme Court has been, as to these breach-of-the-peace statutes, to give them constructions which have retained their constitutionality, and that, as to the charged portions of Penal Code section 302, we must follow that approach. We believe, in addition, that the result herein does no violence to Castro. Education Code section 16701, dealt with in Castro, referred to a disturbance of a public school or a public school meeting; section 16701 did not, prima facie, limit the manner in which such disturbance could occur. It could occur, for example, by the introduction of a disturbing idea in the exercise of free speech at such a meeting. (Castro v. Superior Court (1970) 9 Cal.App.3d 675, 702-703 [88 Cal.Rptr. 500].) Section 302, however, goes beyond the word “disturb” and specifies how such disturbance shall take place: It has a provision for language or communication (“profane language”), and provisions for conduct (“rude or indecent behavior or any unnecessary noise”). It was as repeatedly noted above, under only a portion of the conduct provisions that appellants were charged. Where a statute, prima facie, regulates expression, vagueness or overbreadth requires a holding of unconstitutionality in its entirety. Where, however, a statute prima facie regulates conduct, any vagueness or overbreadth requires a different approach. In In re Cregler (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305], a case dealing with a statute regulating conduct, it was said, “The rule is well established, however, that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations [citing cases]. Petitioner has not shown that the statute is being invoked against him in the aspects or under the circumstances which he suggests, and hence may not be heard to complain.”
The rule of In re Cregler was cited, and the freedom of speech statute exception thereto noted in Fort v. Civil Service Commission (1964) 61 Cal.2d 331, 338-339 [38 Cal.Rptr. 625, 392 P.2d 385] in the following language (p. 338): “The county, urging us to determine the validity of section 41 only as applied to the particular facts of this case, invokes the general rule that one may not question the constitutionality of a provision as it may be applied to others. [Citing United States v. Raines (1959) 362 U.S. 17, 21-22 [4 L.Ed.2d 524, 529-530, 80 S.Ct. 519] and other cases, including In re Cregler.] As Raines itself recognizes, however, there are *Supp. 15 several exceptions to this rule .... One important exception is that, where a provision restricting free speech and the free dissemination of ideas is involved, a court in considering the claim of overbreadth and vagueness may take into account the operation of the provision as to factual situations other than the one at bar.”
Here we deal with the rule; Castro deals with an exception.
The judgments are affirmed.
Whyte, P. J., concurred.

Section 302. “Every person who willfully disturbs or disquiets any assemblage of people met for religious worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor.” (Enacted 1872. As amended by Stats. 1905,. ch. 409, § 1, p. 657.)

This case was not certified for publication.

The Chavez case, after instruction, was submitted to a jury on March 23; it returned a verdict on March 25.

No representation was made that new private counsel for appellants was available then, or would be at a future time. When the court was prepared to consider appointing the public defender, or other private counsel on February 18, Acosta advised the court there would be no problem in that regard.

Although this section has been a part of the Penal Code for 100 years, it has not been the subject of any prior appellate court consideration.

Compare Screws v. United States (1945) 325 U.S. 91, 103-104 [89 L.Ed. 1495, 1504, 65 S.Ct. 1031],

Castro followed Kay by more than five months.